## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Todd County, Wadena County and
Otter Tail County, municipal
subdivisions of the State of Minnesota,

                Plaintiffs,

                                        **MEMORANDUM OPINION**
    v.                                    **AND ORDER**
                                        Civil No. 04-4218 ADM/RLE

Barlow Projects, Inc.,

                Defendant.

_____

City of Perham, a municipal subdivision
of the State of Minnesota,

                Plaintiff,

    v.                                         Civil No. 04-4220 ADM/RLE

Barlow Projects, Inc.,

                Defendant.

_____

Stephen F. Rufer, Esq., Pemberton Sorlie Rufer & Kershner, Fergus Falls, MN, appeared for and on behalf of Plaintiffs Todd, Wadena and Otter Tail Counties.

Dennis W. Happel, Esq., Happel Law Office, Perham, MN appeared for and on behalf of Plaintiff City of Perham.

Randy G. Gullickson, Esq., Anthony Ostlund & Baer, PA, Minneapolis, MN and W. Todd Haggart, Esq., Vogel Law Firm, Fargo, ND, appeared for and on behalf of Defendant Barlow Projects, Inc.

_____

## I. INTRODUCTION

On February 14, 2005, oral argument was heard before the undersigned United States District

Judge on Barlow Projects, Inc.'s ("Barlow" or "Defendant") Motion to Dismiss [Civil No. 04-4218

("04-4218"), Docket No. 6] the Complaint [04-4218, Docket No. 1] of Todd County, Wadena

County and Otter Tail County (collectively, "Counties").  Oral argument was also heard on Barlow's

Motion to Dismiss [Civil No. 04-4220 ("04-4220"), Docket No. 4] the Complaint [04-4220, Docket

No. 1] of City of Perham ("Perham").  These cases arise out of related transactions with nearly

identical facts.  For the reasons set forth below, Defendant's Motions to Dismiss are granted in part and

denied in part.

## II. BACKGROUND[1]

Todd County, Wadena County, Otter Tail County and the City of Perham are municipal

subdivisions of the State of Minnesota.  Compl. ¶ 1.[2]  Barlow is a Colorado corporation with its

principal place of business in Fort Collins, Colorado.  Id. ¶ 2.

On November 24, 1998, Otter Tail County hired Barlow to conduct a feasibility study,

memorialized in the "Consulting Services Agreement," concerning the retrofit of the Quadrant Resource

Recovery Facility ("QRRF").  Id. ¶ 5; Consulting Services Agreement (Barlow Decl. [Docket No. 8]

Ex. A).  Constructed in 1985, the QRRF, located in Perham, Minnesota, was designed to combust

municipal solid waste.  Compl. ¶ 4.  In July 1998, the QRRF was closed by directive of the Minnesota

Pollution Control Agency because of violations of state environmental quality laws.  Id.  The purpose of

the feasibility study was "to assist Otter Tail County by providing a technical and economic evaluation

---

[1] For purposes of the instant motion, the facts are considered in the light most favorable to the non-moving party.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

[2] Unless otherwise noted, given the essentially identical nature of the two actions, all citations are to Civil Case No. 04-4218.

of the Quadrant Resource Recovery Facility to determine if the facility can continue to provide a long term economic and environmentally sound waste processing option for Otter Tail and the surrounding counties." Consulting Services Agreement ¶ 1; Compl. ¶ 6.

On March 26, 1999, Barlow issued to Otter Tail County the "Quadrant Resource Recovery Facility Evaluation Study" ("Feasibility Study"), which analyzed retrofitting the QRRF to comply with pertinent environmental regulations. Compl. ¶ 7; Feasibility Study (Barlow Decl. Ex. B). In assessing the cost effectiveness of the retrofit, the study considered revenue generated by potential steam sales to a major dairy company. Id. When the dairy company refused to sign a long-term commitment to purchase steam from the QRRF, Otter Tail County "backed out" of the project. Id.

Barlow subsequently worked with Perham to determine the financially viability of retrofitting the QRRF to sell electricity, rather than steam, to a local power company. Id. ¶ 8. After concluding such a project was financially sound, Perham hired Barlow to complete the retrofit work proposed in the "Feasibility Study" to make the QRRF operational. Id. ¶ 9. Barlow was also hired to operate and manage the facility. Id. These responsibilities were memorialized on March 23, 2001, when Perham and Barlow entered into a "Facility Modifications Agreement" and an "Operations and Maintenance Agreement." Compl. ¶ 9; Facility Modifications Agreement (Barlow Decl. Ex. C); Operations and Maintenance Agreement (Barlow Decl. Ex. D).

Between March 23, 2001 and March 27, 2001, Otter Tail County, Wadena County and Todd County each executed an "Agreement between the City of Perham, Minnesota and [County Name], Minnesota for Waste Deliveries to the Perham Solid Waste Facility" ("Waste Delivery Agreements"). Compl. ¶ 11; Waste Delivery Agreements (Barlow Decl. Exs. E, F, G). The Waste Delivery

3

Agreements obligated the Counties to deliver waste to the facility for a "tipping fee" of $49 per ton for the first calendar year.  Compl. ¶ 11.  In subsequent years, the tipping fee was subject to change and would be determined through a joint budgeting process involving the Counties and Perham.  Barlow Projects, Inc.'s Mem. in Supp. of Mot. to Dismiss [Docket No. 7] at 5.  The Waste Delivery Agreements also required the counties to deliver a specific tonnage of waste to the facility per month, provide capital for the project through the repayment of bonds issued by Perham, commit to 20 years at an open-ended price, and be responsible for losses if the facility was not successful.  Compl. ¶ 10.  In exchange, the Counties would be entitled to share in any income generated by the facility.  Id.  The agreements were drafted by Barlow and Plaintiffs claim it was understood all Counties must sign them as a condition precedent for the QRRF retrofit to move forward.  Compl. ¶ 12.

In each year since the QRRF was retrofitted and began operation, Perham and the Counties contend it has lost money.  Id. ¶ 17.  They claim the tipping fees have jumped dramatically, resulting in losses due to increased operating fees, and that they have not realized bonus revenue or profits from the facility sale of steam or electricity.  Id.  Furthermore, the Counties continue to guarantee repayment of a substantial and growing amount of bonds.  Id.  Plaintiffs contend the retrofit was approved and they entered into the Waste Delivery Agreements based on the tipping fees and cost projections provided by Barlow.  Id. ¶ 16.  Plaintiffs claim Barlow based their feasibility projections on figures they knew or should have known were false at the time in order to obtain the $8,000,000 contract necessary for the QRRF retrofit.  As a result, the Counties elected to forego waste disposal options that involved less financial risks or bonding obligations, had lower tipping fees and did not require them to play an active role in managing the company.  Id.

4

In an eight-count Complaint, Otter Tail County, Wadena County and Todd County assert the following claims: (1) fraudulent misrepresentation (Counts 1 and 2); (2) fraudulent omission (Count 3); (3) negligent misrepresentation (Count 4); (4) breach of fiduciary duty (Count 5); (5) engineering malpractice (Count 6); (6) third-party beneficiary misrepresentation and breach of contract (Count 7); and (7) breach of contract (Count 8).  Compl. 04-4218.  With the exception of engineering malpractice (Count 6), Barlow moves to dismiss all of the aforementioned claims.

Likewise, in its eight-count Complaint, Perham asserts the following claims: (1) fraudulent misrepresentation (Counts 1 and 2); (2) fraudulent omission (Count 3); (3) negligent misrepresentation (Count 4); (4) breach of fiduciary duty (Count 5); (5) engineering malpractice (Count 6); (6) breach of contract (Count 7); and (7) negligence (Count 8).[3]  Compl. 04-4220.  With the exception of engineering malpractice (Count 6) and negligence (Count 8), Barlow moves to dismiss all of the aforementioned claims.

## III. DISCUSSION

**A.      Standard of Review**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss claims for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most

---

[3] Although "Negligence" is listed as Count Nine in the Complaint, 04-4220, there is no Count Eight listed.

favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.[4]  Hamm

v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D.

Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the

nonmoving party.  Ossman, 825 F. Supp. at 880.

A complaint should be dismissed "only if it is clear that no relief can be granted under any set of

facts that could be proved consistent with the allegations."  Frey v. City of Herculaneum, 44 F.3d 667,

671 (8th Cir. 1995) (citations omitted); Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996).  "A

motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the

plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to

relief."  Frey, 44 F.3d at 671.

**B.      Count I: Fraudulent Misrepresentations in the "Facility Evaluation Study"**

The first count in both Complaints asserts common law fraud based upon misrepresentations

allegedly made by Barlow in the "Facility Evaluation Study."  Specifically, Plaintiffs contend Barlow

misrepresented: (1) net steam sales would be $623,000 per year; (2) projected cost savings resulting

from the projected tipping fees; (3) maintenance reserve costs would be $60,000 annually; and (4) the

urgency with which the next stage of the project needed to be completed to preserve the condition of

the equipment.

Barlow argues Count I must be dismissed because: (1) it is not pled with particularity; (2) the

---

[4]  In response to Barlow's Mem. of Law in Supp. of Mot. to Dismiss, Plaintiffs submitted
additional documentation to support their various fraud claims.  At oral argument, counsel for Barlow
waived any objection to considering this information as part of the pleadings.

Facility Evaluation Study contains future projections not capable of serving as the basis of a fraud claim and (3) there is no evidence the study misrepresented past or present fact.

To establish a claim of fraudulent misrepresentation under Minnesota law, a plaintiff must prove that: (1) defendant made a false representation about past or present fact; (2) the false representation was material and susceptible of knowledge; (3) defendant knew the representation was false or made the representation without knowing whether it was true or false; (4) defendant intended that the plaintiff rely on the representation; (5) plaintiff reasonably relied on the representation; and (6) plaintiff suffered damages due to the representation. Masepohl v. American Tobacco Co., 974 F. Supp. 1245, 1250 (D. Minn. 1997) (citing M.H. v. Caritas Family Servs., 488 N.W.2d 282, 289 (Minn. 1992)).

Allegations of fraud must be stated with particularity. See Fed. R. Civ. P. 9(b); Commercial Prop. Invs. Inc. v. Quality Inns Int'l, 61 F.3d 639, 644 (8th Cir. 1995). "Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Commercial Prop. Invs. Inc., 61 F.3d at 644 (citations omitted). Plaintiffs must state the "who, what, when, where, and how: the first paragraph of any newspaper story." Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549-50 (8th Cir. 1997).

It is well established that financial projections cannot serve as the basis of a fraud action "unless they are false representations of a past or present material fact." Crowell v. Campbell Soup Co., 264 F.3d 756, 764 (8th Cir. 2001); see also Berg v. Xerxes-Southdale Office Bldg. Co., 290 N.W.2d 612, 615 (Minn. 1980). Consequently, in order to survive summary judgment on its fraudulent misrepresentation claim, Plaintiffs must plead with particularity that the financial projections in question

were based on false representations of a past or present fact.

In the Complaints, Plaintiffs first allege Barlow projected net steam sales revenues at $623,000 per year when they should have been $267,000. Compl. ¶¶ 21-22. Plaintiffs argue this disparity is the result of Barlow underestimating expenses related to steam production. Id. ¶ 22. Second, Plaintiffs claim Barlow erroneously anticipated cost savings based on a projected tipping fee of $49.00 per ton by making a comparison to the $56.00 per ton landfill disposal cost then being incurred by Otter Tail County. Id. ¶ 23. Plaintiffs contend Barlow ignored lower available tipping fees, such as the $35.00 per ton disposal fees offered to Todd County by another company. Id. Furthermore, Plaintiffs cite a Barlow memorandum, entitled "Tipping Fee Risks" that was "intended to assist the Counties in evaluating the risk of Tip Fee escalation beyond 3% that is forecast in the project economic pro-form." Tipping Fee Risks Memorandum (Louiseau Aff. [Docket No 31] Ex. B). The memorandum concluded that "[a]ny increase in Tip Fee escalation beyond the 3% forecast is considered minimal." Id. Third, Plaintiffs assert Barlow projected a maintenance reserve cost of $60,000 annually when $200,000 would have been an appropriate capital replacement cost. Compl. ¶ 24. Finally, Plaintiffs claim Barlow fruadulently misrepresented that the next phase of the project had to be completed quickly to preserve the condition of the equipment. Id. ¶ 25. Appended to the Complaint is an affidavit of Matthew J. Clark, a licensed engineer, stating in his professional opinion, "that Barlow Projects Inc. did not meet appropriate standards of care in their professional work related to the Facility." Id. Ex. B. Plaintiffs also allege all of the purported misrepresentations were "repeatedly stated by Barlow in negotiations and meetings." Id. ¶ 21.

These allegations do not meet Rule 9(b)'s particularity requirement. The pleadings do not

provide the who, what, when, where, and how to establish Barlow misrepresented past or present facts

at the time it created the Facility Evaluation Study.  The contracts at issue were not attached to the

pleadings to demonstrate the context of the misrepresentations.  Furthermore, Plaintiffs' allegation that

Barlow made an erroneous and self-serving statement that the next phase of the project had to be

completed quickly is based on a September 6, 2000 letter from Barlow to Perham.  Although the letter

did state "It is therefore imperative that the City of Perham and the County of Otter Tail execute a

waste agreement next Tuesday," the letter informed Plaintiffs that the existing bid pricing was about to

expire and that Barlow anticipated vendors would subsequently increase their prices.[5]  Sept. 6, 2000

Letter (Louiseau Aff. [Docket No. 32] Ex. C).  Ultimately, the Complaint merely alleges Barlow's

projections erroneously underestimated expenses.  Although the projections may be evidence of

engineering malpractice, they are not sufficiently particular to support a separate fraudulent

misrepresentation claim.

   In addition to the Complaint, Plaintiffs have submitted several affidavits and exhibits to bolster

its fraudulent misrepresentation claims.  These affidavits contain statements such as "Barlow

represented to us on a number of occasions that the plant would be profitable," Hanan Aff. [Docket

No. 27] ¶ 4, and Barlow made representations "numerous times . . . that their figures were accurate

and conservative."  Louiseau Aff. [Docket No. 30] ¶ 3.  These statements are simply too general to

meet the particularity requirement.

_____

   [5]  Plaintiffs also cannot show reliance on the September 6, 2000 letter urging them to execute a
waste agreement quickly since the subsequent contracts for retrofitting and operating the QRRF were
not signed until March 2001.

Finally, Plaintiffs' expert witness avers in a second affidavit that "[a] reasonable engineer would have either known those figures to be false or had to have represented them as facts without knowing if they were true or false."  Clark Aff. II [Docket No. 33].  In his accompanying analysis and report, the expert states his conclusions are based only on information that was available to Barlow at the time the Facility Evaluation Study was prepared.  After careful review of the submitted material, the Court finds Plaintiffs have still not pled a past or present fact that was misrepresented at the time Barlow prepared the study.  Plaintiffs have not identified an individual who knew the projections were wrong when the study was created.  Although Clark, the expert witness, contends his analysis is based on information available to Barlow at the time the Facility Evaluation Study was prepared, he clearly had the benefit of retrospection.  Although Clark's affidavit and accompanying analysis may support a claim that Barlow acted negligently, it smacks of the "fraud by hindsight" and "Monday morning quarterbacking" that Rule 9(b) was designed to prevent.  Weisberg v. St. Jude Medical Inc., 158 F.R.D. 638, 645 (D. Minn. 1994); Smith v. Circuit City Stores, Inc., 286 F. Supp. 2d 707, 715 (D. Minn. 2003).

Furthermore, Plaintiffs have not shown Barlow intended for Plaintiffs to rely, and reasonable reliance, on the contested representations.  The November 1998 Consulting Services Agreement, the precursor of the Facility Evaluation Study, contains a provision stating:

> Any reuse of said documents [including the feasibility report] on any extension of the project or any other project by [Otter Tail] County without prior written verification or adaptation by Consultant for the specific purpose intended, shall be at the County's sole risk without liability or legal exposure to Consultant [Barlow].  The County shall indemnify, defend, and hold harmless from all claims, damages, losses and expenses including attorney's fees, arising out of or resulting from any such reuse by the County . . . .

¶ 9(B).

10

The projections in the Facility Evaluation Study were designed with the assumption that the QRRF would generate revenue through steam sales.  When the projected steam purchaser declined to participate, Otter Tail County dropped out of the project.  Perham subsequently contracted with Barlow to revamp the project based on electrical sales.  Plaintiffs have not pled with particularity that Barlow sanctioned the use of these projections to support the latter business model.  In fact, Barlow prepared new projections, attached as exhibits to the contracts with Perham and the Counties in March 2001 based on the new business model.  Under the revised projections, for instance, Barlow estimated net electrical revenue would be $408,000, well below the estimate for steam sales contained in the Facility Evaluation Study.[6]  Finally, the Feasibility Evaluation Study was prepared in March 1999 and Otter Tail County subsequently abandoned the project when the projected steam purchaser declined to participate.  A claim that representations made in the March 1999 study were intended to induce Perham to enter into contracts with Barlow (and the Counties to then enter into contracts with Perham) in March 2001 for the retrofit of a QRRF dependent on revenue generated by the sale of electricity, rather than steam, is too attenuated to meet Rule 9's specificity requirements.

For the aforementioned reasons, Count I of both Complaints must be dismissed.

## C.     Count II: Fraudulent Misrepresentations in a Feasibility Study Budget

The second count in each Complaint asserts common law fraud based upon misrepresentations allegedly made by Barlow in a budget prepared in connection with the Feasibility Study and

---

[6]  Estimates of revenue generated from ash disposal fees was similarly decreased from $325,760 per year in the Facility Evaluation Study to $250,000 per year in the March 2001 contracts.

subsequently made part of the Operations and Maintenance Agreement between Barlow and Perham.

First, Plaintiffs contend Barlow misrepresented electrical revenues and costs and failed to include a

standby power supply in the budget.  Compl. ¶ 34(a).  Barlow estimated annual net electrical revenue

would be $408,000 while Plaintiffs argue it should have been $231,100.  Id.  Second, Plaintiffs claim

the anticipated water and sewer costs were "budgeted lower than industry standards and experience

dictate."  Id. ¶ 34(b).  Third, Plaintiffs argue Barlow erred by budgeting $49,000, rather than $233,000

for capital replacement costs.  Id. ¶ 34(c).  Fourth, Plaintiffs contend Barlow only budgeted for 5

percent contingency costs when industry standards dictate contingency costs of 10 percent.  Id. ¶

34(d).  Finally, Plaintiffs claim the facility failed to meet the throughput capacity guaranteed by Barlow.

Id. ¶ 34(e).  Plaintiffs contend Perham approved the retrofit and the Counties were induced to enter

into agreements to deliver waste to the QRRF as a result of these misrepresentations.  The same

elements and particularity standards discussed with respect to Count I also apply to Count II.

Count II also fails to plead misrepresentation of specific past or present facts known to Barlow

at the time the feasibility study was prepared.  Many of the allegations in Count II restate statements at

issue in Count I.  Once again, Plaintiffs claim is only premised on alleged misrepresentations that

contradict "industry standards and experience."  See, e.g., id. ¶ 34(a).  Again, Clark's second affidavit

and accompanying retrospective analysis of the alleged errors in Barlow's projections are insufficient to

satisfy Rule 9(b)'s particularity standard.  Many of the figures contested by Plaintiffs are incorporated

into the Annual Facility Budget included in Appendix F to the Operations and Facilities Agreement.

The caption to the budget clearly states "These are estimates only."  Plaintiffs have not pled any facts

indicating the disparity between the estimated figures in the annual facility budget and the actual figures

was a result of fraudulent misrepresentation rather than inaccurately projected expenses and revenues.

As a result, Count II is also dismissed.


**D.      Count III: Fraudulent Omissions**

Count III of both Complaints alleges Barlow committed common law fraud by failing to

disclose material facts that would contravene the misrepresentations set forth in Counts I and II.

Plaintiffs argue Barlow: (1) had knowledge of the material facts contradicting the aforementioned

misrepresentations; (2) had a duty to disclose those facts to Plaintiffs; (3) "intentionally failed to disclose

the material facts to Plaintiffs with the intent and for the purpose of inducing Plaintiffs to become

involved in the Perham project;" and (4) as a direct and proximate result of the fraudulent omissions,

Plaintiffs incurred damages.  Compl. ¶¶ 40-44.  They do not recite any specific allegations beyond

those discussed in Counts I and II.

Omission or nondisclosure may only constitute fraud if a duty, either legal or equitable, exists

requiring the disclosure of certain facts.  Richfield Bank & Trust Co. v. Sjogren, 244 N.W.2d 648, 650

(1976).  Under Minnesota law, a duty to disclose information to another party only arises in three

circumstances:

> (1) where a party has made a representation and must disclose more information to prevent the
> representation from being misleading; (2) where a party has special knowledge of material facts
> to which the other party does not have access; and (3) where a party stands in a confidential or
> fiduciary relation to the other party.

Exeter Bancorp. Inc. v. Kemper Securities Group, 58 F.3d 1306, 1314 (8th Cir. 1995) (citing

Richfield Bank & Trust, 244 N.W.2d at 650).  "Once such a duty is established, concealment is

fraudulent if a party conceals a fact material to the transaction, and peculiarly within his knowledge, knowing that the other party acts on the presumption no such fact exists . . . ." <u>Exeter Bancorp. Inc.</u>, 58 F.3d at 1314 (quotations and citations omitted). Because fraudulent omission sounds in common law fraud, Rule 9(b) requirements also apply to this Count.

As a threshold matter, Plaintiffs must establish Barlow had a duty to disclose material facts. For reasons discussed <u>infra</u>, at Count V, this Court concludes Barlow did not enter into a fiduciary relationship with Plaintiffs. As a result, the fiduciary duty circumstance is inapplicable. Assuming <u>arguendo</u>, Barlow intentionally misrepresented the statements alleged in Counts I and II, Barlow would have had a duty under the first and second exception to disclose material facts. Such material facts would contradict the alleged misrepresentations (exception 1) and were specifically related to the efficacy of the projections. As a result, the facts would be within the special knowledge of Barlow ,since Plaintiffs were not experienced in conducting studies concerning the feasibility of retrofitting waste disposal facilities (exception 2).

However, even assuming that Barlow owed Plaintiffs a duty to disclose material facts, Plaintiffs' fraudulent omissions claim cannot succeed unless they can plead with particularity: (1) that Barlow made some affirmative statement that was misleading as a result of specific alleged omissions, or (2) that Barlow failed to disclose certain, specific material facts uniquely in its possession. In Count III of their respective Complaints, Plaintiffs do not specify additional omissions of material facts. They state, in conclusory fashion, "Defendant had knowledge of the material facts set forth" in Counts I and II and that "Defendants intentionally failed to disclose the material facts to plaintiffs with the intent and for the purpose of inducing plaintiffs to become involved in the Perham project." Compl. ¶ 43. For the

14

reasons discussed in Counts I and II, these bare assertions are insufficient to meet the heightened

pleading standard and Count III of both Complaints must be dismissed.

**E.      Count IV: Negligent Misrepresentation**

In the fourth count of both Complaints, Plaintiffs allege Defendant negligently misrepresented

material facts, which they relied upon in entering into their respective parts of the QRRF agreements.

Count IV is based on the same misrepresentations outlined above in Counts I and II.

Under Minnesota law, negligent misrepresentation claims sound in fraud and must satisfy the

Rule 9(b) particularity requirement.  Conwed Corp. v. Employers Reinsurance Corp., 816 F. Supp.

1360, 1363 (D. Minn. 1993); Juster Steel v. Carlson Cos., 366 N.W.2d 616, 618-19 (Minn. Ct.

App. 1985).  "A misrepresentation is made negligently when the misrepresenter has not discovered or

communicated certain information that the ordinary person in his or her position would have discovered

or communicated."  Florenzano v. Olson, 387 N.W.2d 168, 174 (Minn. 1986).  Negligent

misrepresentation occurs when:

> One who, in the course of his business, profession or employment, or in a transaction in which
> he has a pecuniary interest, supplies false information for the guidance of others in their business
> transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance
> upon the information, if he fails to exercise reasonable care or competence in obtaining or
> communicating the information.

Hurley v. TCF Banking and Sav., F.A., 414 N.W.2d 584, 586 (Minn. Ct. App. 1987) (quoting

Bonhiver v. Graff, 248 N.W.2d 291, 298 (Minn. 1976)).

Again, Plaintiffs' negligent misrepresentation claim relies solely on the purported false

statements alleged in Counts I and II.  Thus, the claim is not pleaded with sufficient particularity to show

Defendant did not exercise reasonable care or competence in obtaining or communicating a past or

present <u>fact</u> at the time the statements were made.  Plaintiffs have not shown Defendant asserted a past

or present "fact as of his or her own knowledge without knowing it to be true or false[.]" <u>Florenzano</u>,

387 N.W.2d at 175.  As a result, Plaintiffs' negligent misrepresentation claims must be dismissed.

## F.    Count V: Breach of Fiduciary Duty

In Count V of both Complaints, Plaintiffs contend Barlow breached a fiduciary duty by failing to

disclose material facts.  Plaintiffs claim a conflict of interest arose when Barlow agreed to conduct a

feasibility study for a project which Barlow knew, if approved, would yield a $8,872,000 contract for

their benefit.  Plaintiffs further claim a conflict of interest arose when Barlow recommended it be hired

to operate the plant and limited its own plant-related financial liability to $100,000 per year, while

Plaintiffs committed to unlimited financial responsibility.  Plaintiffs cite to a provision in the Consulting

Services Agreement requiring Barlow to:

> monitor its contract, business acquisitions, sale of its business, and other transactions to
> ascertain whether such transaction's interest in relation to this contract interfere with
> Consultant's ability to complete this contract.  In the event that Consultant becomes aware of
> any actual or potential conflict of interest, Consultant shall immediately disclose same to the
> County's authorized agent in writing.

Consulting Services Agreement.  Plaintiffs contend Barlow violated this provision.  Furthermore, they

argue that, given Barlow's knowledge it would receive the retrofit contract if the pro formas indicated

the project was feasible, Barlow was under a fiduciary duty to disclose all material facts.  Based on the

alleged misrepresentations set forth in the discussion of Counts I and II, Plaintiffs argue Barlow

breached its fiduciary duty.

"Although the general rule is that one party to a transaction has no duty to disclose material

facts to the other, an exception to this rule is made when the parties are in a fiduciary relationship to

16

each other." <u>Midland Nat'l Bank v. Perranoski</u>, 299 N.W.2d 404, 413 (Minn. 1980) (internal

quotations omitted).  Under Minnesota law, a fiduciary relationship exists where the claimed fiduciary

occupies a position of trust and confidence and has knowledge superior to that of the other party.  <u>See</u>

<u>Michels v. Resolution Trust Corp.</u>, 1994 U.S. Dist. LEXIS 6563, *17-18 (D. Minn. Apr. 13, 1994)

(<u>quoting</u> <u>Vacinik v. First Nat'l Bank of Pine City</u>, 416 N.W.2d 795, 799 (Minn. Ct. App. 1987)).  "A

fiduciary's duty must be defined with reference to the experience and intelligence of the person to

whom the duty is owed." <u>Midland Nat'l Bank</u>, 229 N.W.2d at 413.  The existence of a legal duty is a

question of law; however, whether an existing fiduciary duty was breached is a question of fact.  <u>See</u>

<u>Boubelik v. Liberty State Bank</u>, 553 N.W.2d 393, 397 (Minn. 1996); <u>Appletree Square I Ltd. P'ship</u>

<u>v. Investmark, Inc.</u>, 494 N.W.2d 889, 892 (Minn. Ct. App. 1993).

A fiduciary relationship carries with it the highest standard of duty implied by law.  <u>D.A.B. v.</u>

<u>Brown</u>, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997).  In Minnesota, fiduciary relationships have

been recognized between: an attorney and client (<u>Padco, Inc. v. Kinney & Lange</u>, 444 N.W.2d 889

(Minn. Ct. App. 1989)); the personal representative of a trustor and the beneficiaries of the trust (<u>May</u>

<u>v. First Nat'l Bank of Grand Forks</u>, 427 N.W.2d 285 (Minn. Ct. App. 1988)); shareholders of a

closely held corporation (<u>Berreman v. West Publishing Co.</u>, 615 N.W.2d 362, 367 (Minn. Ct. App.

2000)); and the general partner and limited partners of a limited partnership (<u>Appletree Square I Ltd.</u>

<u>P'ship v. Investmark, Inc.</u>, 494 N.W.2d at 893.  No Minnesota case has been found directly discussing

whether and under what circumstances an engineer or other design professional enters into a fiduciary

relationship with the project owner - or claimed third-party beneficiaries to the contract.[7]  However, in

examining a similar issue under Indiana law, the Indiana Court of Appeals found:

> An architect does not owe a fiduciary duty to its employer; rather the architect's duties to its
> employer depend upon the agreement it has entered into with that employer.  An architect is
> bound to perform with reasonable care the obligations for which it contracted and is liable for
> failing to exercise professional skill and reasonable care in preparing plans and specifications
> according to it contract.

Strauss Veal Feeds, Inc. v. Mead and Hunt, Inc., 538 N.E.2d 299, 303 (Ind. Ct. App. 1989).

Similarly, in the instant case, Barlow's obligations arise solely from contractual obligations to Plaintiffs.

Otter Tail County's decision to "back out" of the first iteration of the project, coupled with the

Counties' acknowledgment that they were "skeptical about the project" signals the absence of the trust

and confidence necessary to establish a fiduciary relationship.  Compl. ¶ 16.

Plaintiffs' argument that a fiduciary duty was created by the conflict of interest of having Barlow

conduct the feasibility study for a project whose construction they would subsequently oversee is also

unpersuasive.  There is no duty to disclose obvious matters.  Gunderson v. Alliance of Computer

Prof'ls, Inc., 628 N.W.2d 173 (Minn. Ct. App. 2001); Exeter, 58 F.3d at 1316.  Plaintiffs do not

claim they were unaware that Barlow stood to profit from the retrofit of the QRRF if the feasibility plan

concluded it was financially viable.  Plaintiffs themselves admit they "could have hired a neutral

---

[7] In BRW, Inc. v. Harstad, 1997 Minn. App. LEXIS 758 (Minn. Ct. App. July 8, 1997), an
unpublished opinion, Harstad, a real estate developer, appealed a jury determination that BRW, an
engineering firm, had not breached a fiduciary duty to Harstad.  Although it is clear that the trial court
submitted questions concerning breach of fiduciary duty to the jury, there is no discussion of the duty by
the court.  A close reading of the case reveals Harstad was not BRW's direct client but that the case is
otherwise bereft of information regarding the terms of any agreement between Harstad and BRW or
how any fiduciary duty arose from the relationship.

consultant who did not stand to profit from a finding that the plant would be economically diverse."

Joint Mem. in Opp'n to Mot. to Dismiss at 7, 16; see also Hanan Aff. ¶ 7; Consulting Services

Agreement, Scope of Work at § 1.1.  Finally, Plaintiffs misinterpret the Contracting Services

Agreement's Conflict of Interest provision.  The provision requires Barlow to immediately disclose any

other transactions it enters into that would pose a conflict of interest to the QRRF retrofit.  The

provision does not require Barlow to withdraw because there is a conflict of interest involved as a result

of conducting the feasibility study for a project it would conduct if approved.  Consequently, Plaintiffs'

fiduciary duty claims are dismissed.

**G.      Count VII (04-4218): Third-Party Beneficiary**

Count VII of Complaint 04-4218 alleges the Counties are third-party beneficiaries to the

Operations and Maintenance Agreement between Perham and Barlow and that Todd County and

Wadena County are third-party beneficiaries to the Consulting Services Agreement between Otter Tail

County and Barlow.  As a result, the Complaint asserts these third-party beneficiaries are entitled to

"stand in the shoes" of the contracting party and recover for Barlow's alleged misrepresentations,

negligence and breaches of the respective contracts.

Under Minnesota law, strangers to a contract do not acquire rights to that contract.  Wurm v.

John Deere Leasing Co., 405 N.W.2d 484, 486 (Minn. Ct. App. 1987).  "Unless the contract

expresses some intent by the parties to benefit a third party through contractual performance, a

beneficiary is no more than an incidental beneficiary and cannot enforce the contract."  Id. (citing

Cretex Companies v. Construction Leaders, Inc., 342 N.W.2d 135, 139 (Minn. 1984)).  The

Minnesota Supreme Court adopted the intended beneficiary determination set forth in Restatement

(Second) of Contracts § 302.  See Cretex Companies, 342 N.W.2d at 139.  Under the Restatement test:

> A third party may recover as an intended beneficiary by satisfying either the "intent to benefit" or "duty owed" test.  To establish an intent to benefit, the contract must express some intent by the parties to benefit the third party through contractual performance.  To establish a duty owed, the promisor's performance under the contract must discharge a duty otherwise owed the third party by the promisee.

Chard Realty, Inc.v Shakopee, 392 N.W.2d 716, 720 (Minn. Ct. App. 1986) (citations omitted).

The Operations and Maintenance Agreement contains sufficient evidence to find the Counties were intended beneficiaries to the contract.  Although Perham and Barlow were the only signatories to the Operations and Maintenance Agreement, the contract is replete with references to the "Counties" and evinces a clear intent to benefit Otter Tail County, Todd County and Wadena County.  Article II of the Agreement defines "Counties(y) as "The County and other counties, including Otter Tail, Wadena, Todd, Tri-County, or other Counties under put or pay contracts with the City to deliver Acceptable Waste to the Facility."  The "Finance Date" is also defined as "The date on which the Bonds are issued and all conditions for the release of grant monies have been met, whichever date is later, to finance the retrofit of the Facility, which in no event shall occur before all Counties commit to a put or pay contract."  Operations and Maintenance Agreement, Art. II.  This definition indicates participation of the Counties was a condition precedent for the retrofit to proceed.  Furthermore, the Agreement provides for the formation of a "County Coordinating Committee," "formed by participating Counties and the City to coordinate the activities essential to assuring the economic viability of the Facility."  Id. According to the Agreement, the County Coordinating Committee had the power to, inter alia, "request additional services of the operator [Barlow]," and review and approve facility costs and the Annual

Facility Budget.  See id. §§ 3.11, 4.01, 4.13, 5.02, 5.08, Appendices D, E, F.  Finally, the Waste

Delivery Agreements, executed by Perham and the individual counties and referenced as the condition

precedent to commencement of the retrofit in the "Finance Date" definition, were drafted by Barlow

and incorporated the terms of the Operations and Maintenance Agreement.  As a result, the Operations

and Maintenance Agreement evinces a clear intent to benefit the Counties.

The Counties' Complaint styled their third-party beneficiaries claim as a separate count.  It is

more appropriately considered a question of status rather than a substantive claim.  Although the Court

has found the Counties were intended beneficiaries to the Operations and Maintenance Agreement, the

fraud and breach of contract claims against Barlow are dismissed.  Furthermore, given the scope of the

Motions to Dismiss, it is not necessary at this time to consider whether third-party beneficiary status

would allow the Counties to recover if Barlow is found to have committed engineering malpractice or

acted negligently under Count VIII of Complaint 04-4220.

Wadena County and Todd County argue they are also intended third-party beneficiaries under

the Consulting Services Agreement, signed by both Barlow and Otter Tail County.  The Counties argue

Barlow was aware that Wadena County and Todd County had contributed funds for the feasibility

study at the time the contract was signed.  However, the Consulting Services Agreement specifically

notes that the Agreement is "between the County of Otter Tail . . . and The Barlow Group . . . ." and

does not contain any references to the other Counties.  The Consulting Services Agreement also

contains a Merger Clause stating the entire Agreement is contained within the document and supersedes

all oral agreements and negotiations.  Consequently, there is no indication that the parties intended the

Consulting Services Agreement to benefit Todd County and Wadena County.

21

**H.      Count VII (04-4220)/ Count VIII (04-4218): Breach of Contract**

Count VIII of Complaint 04-4218 alleges Barlow breached an implied covenant of good faith and fair dealing by failing to perform the duties specified in the contract between Barlow and Otter Tail County in a commercially reasonably manner.  Consequently, Otter Tail County seeks damages resulting from Barlow's negligence.  Todd County and Wadena County also seek damages as third-party beneficiaries to the contract between Barlow and Otter Tail County.

Similarly, Count VII of Complaint 04-4220 alleges Perham was a third-party beneficiary to the contract between Barlow and Otter Tail County and claims Perham should recover for Barlow's breach of an implied covenant of good faith and fair dealing.

Under Minnesota law, all contracts, except sales and employment contracts, include an implied covenant of good faith and fair dealing "requiring that one party not 'unjustifiably hinder' the other party's performance of the contract."  In re Hennepin County 1986 Recycling Bond Litigation, 504 N.W.2d 494, 502 (Minn. 1995); see also Minnwest Bank Central v. Flagship Properties LLC, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004); Sterling Capital Advisors, Inc. v. Herzog, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998).  "To establish a violation of this covenant, a party must establish bad faith by demonstrating that the adverse party has an ulterior motive for its refusal to perform a contractual duty."  Minnwest, 689 N.W.2d at 303; Sterling, 575 N.W.2d at 125.

Minnesota courts have construed the implied covenant of good faith and fair dealing narrowly.  Courts have only found the covenant breached when one party has an ulterior motive for fulfilling a condition precedent to a contract or a party does not use good faith in exercising an unlimited discretionary power over a term of the contract.  See In re Hennepin County, 504 N.W.2d at 502;

22

White Stone Partners, LP v. Piper Jaffray Cos., 978 F. Supp. 878, 882 (D. Minn. 1997).  Plaintiffs do not plead that Barlow impeded their ability to carry out their contractual obligations or used bad faith in exercising an unlimited discretionary power over a term of the contract.  Extending "bad faith" to include instances where a party breaches its obligations under a contract would turn every breach into a violation of the implied covenant of good faith and fair dealing.  Therefore, Plaintiffs have failed to allege that Defendant breached an implied covenant of good faith and fair dealing as that covenant has been narrowly interpreted under Minnesota law.

Plaintiffs' Complaints also allege failure to perform in a "reasonable manner" and "negligence."  However, there is no tort cause of action in Minnesota for breach of an implied covenant of good faith and fair dealing.  See Radloff v. First Am. Nat'l Bank of St. Cloud, N.A., 470 N.W.2d 154, 158 (Minn. Ct. App. 1991).  Likewise, the Minnesota Supreme Court has explicitly stated no cause of action exists for negligent breach of a contractual duty.  Lesmeister v. Dilly, 330 N.W.2d 95, 102 (Minn. 1983).  For the aforementioned reasons, Plaintiffs' claims for breach of an implied covenant of good faith and fair dealing is dismissed.  As a result, it is unnecessary to consider Perham's claim that it is a third-party beneficiary to the Consulting Services Agreement.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY**

**ORDERED** that:

1. Defendant's Motion to Dismiss [04-4218, Docket No. 6] is **GRANTED**;

2. Defendant's Motion to Dismiss [04-4220, Docket No. 4] is **GRANTED**; and

3. The question of whether the Counties can recover as third-party beneficiaries to the

Operations and Management Agreement will be determined when the surviving counts are considered.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  May 11, 2005.

24