# LIABILITY COVERAGES



# MINNESOTA COUNTIES INSURANCE TRUST

**EXHIBIT K**



# MINNESOTA COUNTIES INSURANCE TRUST
## ARTICLE TWO
## LIABILITY DECLARATIONS

DOCUMENT NO: _____

RENEWAL OF NO: _____

MEMBER: _____

MAILING ADDRESS: _____

_____

COVERAGE PERIOD   FROM  1/1/2005   TO  1/1/2006     AT 12:01 A.M. CENTRAL STANDARD TIME

Coverage is provided to the Member subject to the Joint Powers Agreement and the By-Laws of the Minnesota Counties Insurance Trust and any endorsements attached hereto. Nothing contained in the Trust Joint Powers Agreement, Trust By-Laws or Trust Coverage Document shall constitute a waiver of any immunities conferred under Minnesota Statute Section 466.03, nor a waiver of the limits of governmental liability under Minnesota Statute 466.04. Various provisions in this Coverage Document restrict coverage. Read the Coverage Document carefully to determine rights, duties and what is and is not covered.

## SECTION I.  LIABILITY COVERAGES

### LIMITS OF LIABILITY

Coverage Part A – Bodily Injury and Property Damage Liability

    Per Claimant Limit              $     300,000
    Per Occurrence Limit            $   1,000,000
    Fire Damage Limit, per Fire     $     100,000
        Deductible    $ 1,000    Each Occurrence

Coverage Part B – Personal and Advertising Injury Liability

    Per Claimant Limit              $     300,000
    Per Occurrence Limit            $   1,000,000
        Deductible    $ 1,000    Each Occurrence

Coverage Part C – Medical Payments

    Any One Person Limit            $       2,500
        Deductible    $ 0

Coverage Part D – Public Officials Liability Coverage

    Per Claimant Limit              $     300,000
    Per Wrongful Act Limit          $   1,000,000
    Retroactive Date
        Deductible    $ 2,500    Each Wrongful Act

Coverage Part E – Employee Benefits Liability

    Per Claimant Limit              $     300,000
    Per Wrongful Act Limit          $   1,000,000
    Retroactive Date
        Deductible    $ 1,000    Each Wrongful Act

## SECTION II.  AUTOMOBILE COVERAGES

### LIMITS OF LIABILITY

Coverage Part A – Automobile Liability Coverage including Hired and Non-Owned Autos
Bodily Injury and Property Damage

    Per Claimant Limit              $     300,000
    Per Occurrence Limit            $   1,000,000
        Deductible    $ 0

Coverage Part B – Personal Injury Protection

    Coverage and Limits per Form
        Deductible    $ 0

Coverage Part C – Physical Damage Coverage

    Coverage per Form
        Deductible    $ Per Schedule

Coverage Part D – Uninsured and Underinsured Motorists Coverage
Stacking of Limits is Precluded

Uninsured Motorist

    Per Claimant Limit              $      60,000
    Per Occurrence Limit            $      60,000
        Deductible    $ 0

Underinsured Motorist

    Per Claimant Limit              $      60,000
    Per Occurrence Limit            $      60,000
        Deductible    $ 0

COUNTERSIGNED    _____12/2/2004_____
                         (Date)

BY _____
          (Authorized Representative)

MCITCD (2005)

# INDEX

## LIABILITY

| | PAGE # |
|---|---|
| General Liability | 1-6 |
| Personal & Advertising Injury | 7-8 |
| Medical Payments | 9-10 |
| Public Officials Liability | 11-14 |
| Employee Benefits Liability | 15-17 |
| Limits of Coverage | 18-19 |
| Automobile Liability | 20-23 |
| Personal Injury Protection | 24-32 |
| Automobile Physical Damage | 33-35 |
| Uninsured & Underinsured Motorists | 36-39 |
| Business Auto Conditions | 40-42 |
| Supplementary Payments | 43 |
| General Exclusions | 44-52 |
| General Conditions | 53-58 |
| Definitions | 59-69 |
| Herbicide/Pesticide Application Coverage | 70 |
| Garagekeepers Comprehensive Coverage | 71 |
| Enhanced Defense Coverage | 72 |

# MINNESOTA COUNTIES INSURANCE TRUST

## ARTICLE TWO - Liability Coverages

Some provisions in this "Coverage Document" restrict coverage. Read the entire "Coverage Document" carefully to determine rights, duties and what is and is not covered. Throughout this "Coverage Document" the words *we*, *us*, *our* and *Trust* mean the Minnesota Counties Insurance Trust. The words *you* and *your* refer to the "Member" shown in the "Declarations". Words and phrases that appear in quotation marks are defined in SECTION VI – DEFINITIONS, unless otherwise noted.

## SECTION I. GENERAL LIABILITY COVERAGE PARTS

### A.  COVERAGE PART A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  *Coverage Agreement*

We will pay those sums that the "Member" becomes legally obligated to pay as "Damages" because of:

a.  "Bodily Injury" or "Property Damage" to which this coverage applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION III. SUPPLEMENTARY PAYMENTS. Coverage A applies only to "Bodily Injury" and "Property Damage" which occurs during the "Coverage Period". The "Bodily Injury" or "Property Damage" must be caused by an "Occurrence". The "Occurrence" must take place in the "Coverage Territory". We will have the right and duty to defend any "Suit" seeking those "Damages". However:

(1)  The amount we will pay for "Damages" is limited as described in SECTION I. F. LIMITS OF COVERAGE;

(2)  We may investigate and settle any incident, "Claim" or "Suit" at our discretion; and

(3)  Our right and duty to defend ends when we have exhausted the applicable limit of coverage in the payment of "Damages".

b.  "Bodily Injury" including "Damages" claimed by any person or organization for care, loss of services or death resulting at any time from the "Bodily Injury".

c.  "Property Damage" that is loss of use of tangible property that is not physically injured shall be deemed to occur at the time of the "Occurrence" that caused it.

2. *Exclusions*

This coverage is subject to SECTION IV. GENERAL EXCLUSIONS.   In addition, this coverage does not apply to:

a. *Mechanical, Amusement or Carnival Type Rides*

"Bodily Injury" or "Property Damage" arising out of the ownership, operation or use of mechanical, amusement or carnival type rides.

b. *Aviation Activity*

"Bodily Injury" or "Property Damage" arising out of the ownership, maintenance or use of any airport or aircraft including;

(1) Airports, runways, hangars, buildings or other properties in connection with aviation activities; and

(2) Aircraft or any component part or equipment thereof or any airplane, navigational or aviation related equipment;

Except that this exclusion shall not apply to:

(1) Search and rescue operations; criminal apprehension; public safety/ emergency service actions to address immediate threats to human life or property; and any other "Law Enforcement Activities" of the "Covered Party" specifically endorsed to this "Coverage Document";

(2) The maintenance or plowing of roads or automobile parking areas at an airport; or

(3) Liability assumed under any "Covered Party Contract" for the ownership, maintenance or use of aircraft.

c. *Autos & Watercraft*

"Bodily Injury" or "Property Damage" arising out of the ownership, maintenance, use or entrustment to others of any "Auto" or watercraft owned or operated by or rented or loaned to any "Covered Party". Use includes operation and "Loading" or "Unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) An owned or non-owned watercraft used in rescue and patrol operation;

(4) Parking an "Auto" on, or on the ways next to, premises you own or rent, provided the "Auto" is not owned by or rented or loaned to you or a "Covered Party";

(5) Liability assumed under any "Covered Party Contract" for the ownership, maintenance or use of any watercraft; or

(6) "Bodily Injury" or "Property Damage" arising out of the operation of "Mobile Equipment".

d.  *Damage to Impaired Property or Property Not Physically Injured*

"Property Damage" to "Impaired Property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "Your Product" or "Your Work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "Your Product" or "Your Work" after it has been put to its intended use.

e.  *Damage to Property*

"Property Damage" to:

(1) Property you own, rent or occupy;

(2) Premises you sell, give away or abandon if the "Property Damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in your care, custody or control;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "Property Damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "Your Work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "Your Work" and were never occupied, rented or held for rental by you.

Paragraph (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "Property Damage" included in the "Products/Completed Operations Hazard".

f.  *Damage to Your Product*

"Property Damage" to "Your Product" arising out of it or any part of it.

g.  *Damage to Your Work*

"Property Damage" to "Your Work" arising out of it or any part of it and included in the "Products/Completed Operations Hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Exclusions d. through g. do not apply to damage by fire to premises rented to you or temporarily occupied by you with permission of the owner. A separate limit of coverage applies to this coverage as described in SECTION I.F. - LIMITS OF COVERAGE.

h.  Injury to *Employee or Law Enforcement Volunteer*

"Bodily Injury" to:

(1) An employee of the "Covered Party" arising out of and in the course of:

    (a) Employment by the "Member"; or

    (b) Performing duties related to the conduct of the "Member's" business; or

(2) A law enforcement volunteer of the "Covered Party" arising out of and in the course of performing duties related to the conduct of the "Member's" business if the volunteer is covered by workers' compensation coverage provided by the Trust while performing such duties; or

(3) The spouse, child, parent, dependent, brother, sister of that employee or volunteer as a consequence of paragraphs (1) or (2) above, respectively.

This exclusion applies:

(1) Whether the "Member" may be liable as an employer or in any other capacity; and

(2) To any obligation to share "Damages" with or repay someone else who must pay "Damages" because of the injury.

This exclusion does not apply to liability assumed by the "Member" under a "Covered Party Contract".

i.  *Expected or Intended Injury*

"Bodily Injury" or "Property Damage" reasonably expected or intended from the standpoint of the "Covered Party". This exclusion does not apply to "Bodily Injury" or "Property Damage" resulting from the use of reasonable force to protect persons or property.

This exclusion does not apply to the reasonable use of force in the performance of "Law Enforcement Activities".

j.  *Failure of Dams*

"Bodily Injury" or "Property Damage" with respect to the total or partial collapse, failure or overflow of any dam or other structure intended in any way to hold, restrict, or divert the flow of water.

k.  *Fireworks*

"Bodily Injury" or "Property Damage" arising out of any fireworks or pyrotechnical display sponsored, permitted or set off by any "Covered Party" or representative of any "Covered Party".

l.  *Liquor Liability*

"Bodily Injury" or "Property Damage" for which any "Covered Party" may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages. .

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

m. *Mobile Equipment*

"Bodily Injury" or "Property Damage" arising out of:

(1) The transportation of "Mobile Equipment" by an "Auto" owned or operated by or rented or loaned to any "Covered Party"; or

      (2)  The use of "Mobile Equipment" in, while in practice for, or while preparing for, any prearranged racing, speed, demolition or stunting activity.

n.  *Recall of Products, Work or Impaired Property*

"Bodily Injury" or "Property Damage" arising out of the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)  "Your Product";

(2)  "Your Work"; or

(3)  "Impaired Property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

This exclusion does not apply to damage by fire to premises rented to you or temporarily occupied by you with permission of the owner. A separate limit of coverage applies to this coverage as described in SECTION I.F. - LIMITS OF COVERAGE.

o.  *Rodeo*

"Bodily Injury" or "Property Damage" arising out of animal racing or rodeo events of any kind.

p.  *Ski Facilities*

"Bodily Injury" or "Property Damage" arising out of the ownership or operation of a ski facility.

q.  *Workers' Compensation and Similar Laws*

Any obligation of the "Member" under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**B. COVERAGE PART B - PERSONAL AND ADVERTISING INJURY LIABILITY**

1. *Coverage Agreement*

   a. We will pay those sums that the "Covered Party" becomes legally obligated to pay as "Damages" because of "Personal Injury" or "Advertising Injury" to which this coverage applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION III. - SUPPLEMENTARY PAYMENTS. We will have the right and duty to defend any "Suit" seeking those "Damages". However:

      (1) The amount we will pay for "Damages" is limited as described in SECTION I.F. LIMITS OF COVERAGE; and

      (2) We may investigate and settle any incident, "Claim" or "Suit" at our discretion; and

      (3) Our right and duty to defend end when we have exhausted the applicable limit of coverage in the payment of "Damages".

   b. This Coverage applies to:

      (1) "Personal Injury" arising out of your business, excluding advertising, publishing, broadcasting or telecasting done for you; and

      (2) "Advertising Injury" committed in the course of advertising your goods, products or services;

   but only if:

      (1) Committed in the "Coverage Territory"; and

      (2) Committed during the "Coverage Period".

2. *Exclusions*

   This coverage does not apply to:

   a. "Personal Injury" or "Advertising Injury":

      (1) Arising out of oral or written publication of material, if done by or at the direction of a "Covered Party" with knowledge of its falsity;

      (2) Arising out of oral or written publication of material whose first publication took place before the beginning of the "Coverage Period"; or

      (3) Arising out of the willful violation of a "Law" committed by or with the consent of the "Covered Party".

b.   "Advertising Injury" arising out of:

   (1)  Breach of contract, other than misappropriation of advertising ideas under an implied contract;

   (2)  The failure of goods, products or services to conform with advertised quality or performance; or

   (3)  The wrong description of the price of goods, products or services.

## C. COVERAGE PART C - MEDICAL PAYMENTS

1. *Coverage Agreement*

   a. We will pay medical expenses as described below for "Bodily Injury" caused by an "Occurrence":

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

      (1) The "Occurrence" takes place in the "Coverage Territory" and during the "Coverage Period";

      (2) The expenses are incurred and reported to the Trust within one year of the date of the "Occurrence"; and

      (3) The injured person submits to examination at our expense, by health care providers of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault, but only at the discretion of the "Member" and/or the Trust. The amount we will pay for "Damages" is limited as described in SECTION I.F. - LIMITS OF COVERAGE. We will pay reasonable expenses for:

      (1) First aid at the time of an "Occurrence";

      (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. *Exclusions*

   We will not pay expense for "Bodily Injury":

   a. To any "Covered Party";

   b. To a person hired to do work for or on behalf of any "Covered Party" or a tenant of any "Covered Party";

   c. To a person injured on that part of premises you own or rent that the person normally occupies;

d.  To a person whether or not an employee of any "Covered Party", if benefits for the "Bodily Injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar "Law";

e.  Included within the "Products/Completed Operations Hazard";

f.  Excluded under COVERAGE A;

g.  To a person confined to a "Covered Party" jail or correctional facility; or

h.  To a person injured while taking part in athletics.

i.  Students and children while:

   (1)  Covered by accident medical expense insurance or coverage purchased and maintained by a "Covered Party"; or

   (2)  Attending a day care program operated by a "Covered Party".

j.  Caused by or arising out of a ride, machine or any other apparatus while it is being operated or used for amusement purposes.

## D. COVERAGE PART D - PUBLIC OFFICIALS LIABILITY COVERAGE

NOTICE: This coverage is a Claims Made Form. Except to such extent as may otherwise be provided herein, the coverage of COVERAGE D - PUBLIC OFFICIALS LIABILITY COVERAGE is limited to liability for only those "Claims" that are first made against the "Covered Party" and reported to the Trust while this coverage part is in force. Please review this coverage part carefully.

1. *Coverage Agreement*

   a. We will pay, on behalf of the "Covered Party", all "Damages" which the "Covered Party" shall be legally obligated to pay for "Claims" first made against it during the "Coverage Period" because of a "Wrongful Act" first committed on or after the Retroactive Date shown in the "Declarations". No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION III. SUPPLEMENTARY PAYMENTS. The "Wrongful Act" must take place in the "Coverage Territory". We will have the right and duty to defend any "Suit" seeking those "Damages". However:

      (1) The amount we will pay for "Damages" is limited as described in SECTION I.F. - LIMITS OF COVERAGE;

      (2) We may investigate and settle any incident, "Claim" or "Suit" at our discretion; and

      (3) Our right and duty to defend end when we have exhausted the applicable limit of coverage in the payment of "Damages" as described in SECTION I.F. - LIMITS OF COVERAGE.

   b. With respect to paragraph 1.a. above, a "Claim" is considered to have been made when notice of such "Claim" is received and reported to the Trust by a "Covered Party", or when received by the Trust, whichever comes first. "Claims" arising out of a "Wrongful Act" will be deemed to have been made at the time the first of those "Claims" is made against a "Covered Party".

2. *Extended Reporting Periods*

   a. We may provide one or more Extended Reporting Periods, as described below, if:

      (1) SECTION I.D. - COVERAGE D - PUBLIC OFFICIALS LIABILITY COVERAGE is canceled or not renewed; or

      (2) We renew or replace SECTION I.D. with coverage that:

         (a) Has a Retroactive Date later than the date shown in the "Declarations" of this Coverage Section; or

(b)  Does not provide Public Officials Liability on a claims-made basis.

b.  An additional charge may be made for a Basic Reporting Period necessitated by cancellation or non-renewal.  A Basic Extended Reporting Period will be provided without additional charge when we renew or replace coverage as specified in a.2. above.  This period starts with the end of the "Coverage Period" and lasts for sixty days.

The Basic Extended Reporting Period does not apply to "Claims" that are covered under any subsequent coverage, or that would be covered but for exhaustion of the amount of coverage applicable to such "Claims".

c.  A Supplemental Extended Reporting Period may be made available, but only by an endorsement and for an additional charge. This supplemental period starts:

(1)  One year after the end of the "Coverage Period" for "Claims" arising out of a "Wrongful Act" reported to the Trust, not later than 60 days after the end of the "Coverage Period", in accordance with Paragraph C of SECTION V. GENERAL CONDITIONS;

(2)  Sixty days after the end of the "Coverage Period" for all other "Claims".

You must give the Trust a written request for the endorsement within 60 days after the end of the "Coverage Period".  The Supplemental Extended Reporting Period will not go into effect unless you pay the additional contribution for such period promptly when due.  We will determine the additional contribution in accordance with our rules and rates. This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the coverage afforded for "Claims" first received during such period is excess over any other coverage available under coverages in force after the Supplemental Extended Reporting Period starts.

d.  Extended reporting periods do not extend the "Coverage Period" or change the scope of coverage provided.  They only apply to "Claims" for "Wrongful Acts" that are committed before the end of the "Coverage Period" (but not before the Retroactive Date, if any, shown in the "Declarations").  "Claims" resulting from such "Wrongful Acts" which are first received and reported to the Trust by a "Covered Party" or received by the Trust during the Basic Extended Reporting Period (or during the Supplemental Extended Reporting Period, if it is in effect) will be deemed to have been made on the last day of the "Coverage Period".

e.  Extended reporting periods do not reinstate or increase the limit of coverage applicable to any "Claim" to which this Coverage Part applies.

3.  *Exclusions*

This Coverage is subject to SECTION IV. GENERAL EXCLUSIONS.

In addition, this Coverage does not apply to:

a.  *Bodily Injury, Property Damage, Personal Injury, or Advertising Injury*

"Bodily Injury", "Property Damage", "Advertising Injury" or "Personal Injury", whether direct, indirect or consequential;

b.  *Bonds*

Any "Claim" arising out of activities with respect to bonds or "Similar Instruments" including, but not limited to, their creation or issuance, payment or default, failure to produce sufficient return, or their administration.  For the purposes of this exclusion, the term "Similar Instruments" includes, but is not limited to, evidences of indebtedness, promissory notes, debentures and bills of exchange.

c.  *Employee Benefits or Wages Wrongfully Withheld*

Any "Claim":

(1)  seeking back salary of any type;
(2)  seeking lost, past or futures wages;
(3)  seeking benefits wrongfully withheld or not withheld under "Law"; or
(4)  arising from collective bargaining agreements.

d.  *Employee Retirement Income Security Act.*

Any "Claim" or "Suit" for "Damages" arising out of or in connection with, or any obligations incurred or imposed upon you, which arise out of the Employee Retirement Income Security Act of 1974 (29 U.S.C.§ 1001 et seq.), Public Employees Retirement Act or any "Law" which amends those acts, or any similar provision of any local, state or federal law, whether statutory or common.

e.  *Failure to Purchase Insurance or Coverage*

Any "Claim" arising from the failure to purchase or secure adequate insurance, surety bonds or coverage.

f.  *Fiduciary Responsibility*

Any "Claim" arising out of a "Covered Party's" activities and/or responsibilities as a "Fiduciary".  For the purposes of this exclusion, "Fiduciary" means any capacity, wherein a "Member" receives or handles money, contracts a debt, or transacts business for the benefit of another regardless of whether the duty is imposed by statute, contract or in any way constitutes a moral obligation of the "Member".

g. *Fraud, Dishonesty, Malicious and Criminal Acts*

Any "Claim" arising out of any dishonest, illegal, criminal, malicious or fraudulent act, whether or not intentional, by any "Covered Party".

h. *Illegal Profit, Refund of Fees, Taxes or Overcharges*

Any "Claim":

(1) Arising out of any "Covered Party" gaining any profit or remuneration to which they were not legally entitled;

(2) Arising from or involving tax avoidance;

(3) Seeking return of fees, taxes, governmental grants, entitlements, subsidies, or overcharges;

(4) Seeking the refund of taxes, assessments or charges as a result of an improper or illegal levy, tax, tax abatement, imposition, assessment or valuation of property.

(5) Involving the disposition of tax-forfeited property. However, this exclusion does not apply to the administration process of such disposition.

i. *Intentional Wrongdoing*

Any "Claim" arising out of a "Wrongful Act" committed intentionally with knowledge of wrongdoing.

j. *Loss of Property Use*

Any "Claim" arising out of a loss or criminal abstraction or damage to, or destruction of any tangible property, or the loss of use of such property.

## E. COVERAGE PART E - EMPLOYEE BENEFITS LIABILITY

NOTICE: This coverage is a Claims Made Form. Except to such extent as may otherwise be provided herein, the coverage of COVERAGE E - EMPLOYEE BENEFITS LIABILITY COVERAGE, is limited to liability for only those "Claims" that are first made against the "Covered Party" and reported to the Trust while this coverage part is in force. Please review this coverage part carefully.

1. *Coverage Agreement*

   a. We will pay on behalf of the "Member" all "Damages" which the "Member" shall become legally obligated to pay as a result of "Damages" sustained by an employee, prospective employee, former employee or the beneficiaries or legal representatives thereof in the "Administration" of the "Member's" "Employee Benefit Programs" as defined herein by any "Wrongful Act" first committed on or after the retroactive date shown in the "Declarations". No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION III. SUPPLEMENTARY PAYMENTS.

   The "Wrongful Act" must take place in the "Coverage Territory". We will have the right and duty to defend any "Suit" seeking those "Damages" even if such "Suit" is groundless, false or fraudulent. However:

   (1) The amount we will pay for "Damages" is limited as described in SECTION I.F. LIMITS OF COVERAGE;

   (2) We may investigate and settle any "Claim" or "Suit" at our discretion; and

   (3) Our right and duty to defend end when we have used up the applicable limit of coverage in the payment of "Damages" as described in SECTION I.F. LIMITS OF COVERAGE.

   b. With respect to paragraph 1.a. above, a "Claim" is considered to have been made when notice of such "Claim" is received and reported to the Trust by a "Covered Party" or when received by the Trust, whichever comes first. All "Claims" because of a "Wrongful Act" will be deemed to have been made at the time the first of those "Claims" is made.

2. *Extended Reporting Periods*

   a. We may provide one or more Extended Reporting Periods, as described below, if:

   (1) SECTION I.E. COVERAGE E - EMPLOYEE BENEFITS LIABILITY COVERAGE is canceled or not renewed; or

   (2) We renew or replace SECTION I.E. with coverage that:

   (a) Has a Retroactive Date later than the date shown in the "Declarations" of this Coverage Provision; or

(b) Does not provide Employee Benefit Liability on a claims-made basis.

b.  An additional charge may be made for a Basic Extended Reporting Period necessitated by cancellation or non-renewal. A Basic Extended Reporting Period will be provided without additional charge when we renew or replace coverage as specified in a. (2) above. This period starts with the end of the "Coverage Period" and lasts for sixty days.

The Basic Extended Reporting Period does not apply to "Claims" that are covered under any subsequent coverage, or that would be covered but for exhaustion of the amount of coverage applicable to such "Claims".

c.  A Supplemental Extended Reporting Period of three years duration may be made available, but only by an endorsement and for an additional charge. This supplemental period starts:

(1) One year after the end of the "Coverage Period" for "Claims" arising out of a "Wrongful Act" reported to the Trust, no later than 60 days after the end of the "Coverage Period", in accordance with Paragraph C of SECTION V. GENERAL CONDITIONS:

(2) Sixty days after the end of the "Coverage Period" for all other "Claims".

You must give the Trust a written request for the endorsement within 60 days after the end of the "Coverage Period". The Supplemental Extended Reporting Period will not go into effect unless you pay the additional contribution for such period promptly when due. We will determine the additional contribution in accordance with our rules and rates. This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the coverage afforded for "Claims" first received during such period is excess over any other coverage available under coverages in force after the Supplemental Extended Reporting Period starts.

d.  Extended reporting periods do not extend the "Coverage Period" or change the scope of coverage provided. They only apply to "Claims" for "Wrongful Acts" that are committed before the end of the "Coverage Period" (but not before the Retroactive Date, if any, shown in the "Declarations"). "Claims" resulting from such "Wrongful Acts" which are first received and reported to the Trust by a "Covered Party" or received by the Trust during the Basic Extended Reporting Period (or during the Supplemental Extended Reporting Period it is in effect) will be deemed to have been made on the last day of the "Coverage Period".

e.  Extended Reporting Periods do not reinstate or increase the Limit of Coverage applicable to any "Claim" to which this coverage part applies.

3. *Exclusions*

This coverage is subject to SECTION IV. GENERAL EXCLUSIONS. In addition, this coverage does not apply to:

a. Any "Claim" or "Suit" arising out of interpreting or giving counsel to employees with respect to "Employee Benefit Programs".

b. "Bodily Injury" to, or sickness, disease, or death of any person, or "Property Damage" to or destruction of any tangible property, including the loss of use thereof;

c. Any "Claim" or "Suit" arising out of failure of performance of contract by any insurer, including failure of any "Employee Benefit Programs";

d. Any "Claim" or "Suit" arising out of the "Covered Party's" failure to comply with workers' compensation, unemployment insurance, social security or disability benefits, or similar laws.

e. Any "Claim" or "Suit" arising out of;

   (1) Failure of any benefit plan to perform as represented by a "Covered Party";

   (2) The investment or non-investment of funds;

f. Any "Claim" or "Suit" arising out of any actual or alleged "Wrongful Acts" or breach of duty, committed or alleged to have been committed by a trustee, in the discharge of fiduciary duties, obligations or responsibilities imposed by the Employee Retirement Income Security Act or other similar plan or retirement pension plan or deferred compensation.

4. *Limit of Coverage*

The Limit of Coverage stated in SECTION I.F. as applicable to each "Wrongful Act" is the total limit of the Trust's liability for all "Damages" arising out of all acts or omissions in connection with the same "Wrongful Act", regardless of the number of "Claims" or claimants. The inclusion in this Coverage Section of more than one "Covered Party" shall not operate to increase the Limits of Coverage.

## F.  LIMITS OF COVERAGE

1.  Subject to the terms of this "Coverage Document", and any endorsements hereto, and the Joint Powers Act and the By-Laws of the Minnesota Counties Insurance Act, we will pay the Limits of Coverage shown in the "Declarations" regardless of the number of:

    a.  "Covered Parties";

    b.  "Claims" made or "Suits" brought; or

    c.  Persons or organizations making "Claims" or bringing "Suits".

2.  Per Claimant/Per Occurrence or Wrongful Act

    Subject to a., b., c. and d. below, the PER CLAIMANT LIMIT, as stated in the "Declarations", is the most we will pay under Coverage A, B, D and E for the sum of "Damages" to any one Claimant making a "Claim" or bringing a "Suit".

    a.  The PER OCCURRENCE LIMIT as stated in the "Declarations" is the most we will pay under Coverage A for the sum of all "Damages" because of all "Bodily Injury" and "Property Damage" arising out of any one "Occurrence".

    b.  The PER OCCURRENCE LIMIT as stated in the "Declarations" is the most we will pay under Coverage B for the sum of all "Damages" because of all "Personal Injury" and all "Advertising Injury" arising out of any one "Occurrence" or "Wrongful Act".

    c.  The PER WRONGFUL ACT LIMIT as stated in the "Declarations" is the most we will pay under Coverage D for all "Damages" arising out of any one "Wrongful Act".

    d.  The PER WRONGFUL ACT LIMIT as stated in the "Declarations" is the most we will pay under Coverage E for all "Damages" arising out of any one "Wrongful Act".

3.  Subject to 2. above, the FIRE DAMAGE LIMIT as stated in the "Declarations" is the most we will pay under Coverage A for "Damages" because of "Property Damage" to premises rented to you arising out of any one fire.

4.  The MEDICAL PAYMENTS LIMIT as stated in the "Declarations" is the most we will pay to any one person under Coverage C for medical expenses arising out of "Bodily Injury" caused by "Accident".

5.  Notwithstanding paragraphs 1. through 4. above, the most we will pay on any "Claim" within the scope of Minnesota Statute Chapter 466 or any similar law or any "Claim" arising from the liability of others assumed under a "Covered Party Contract" shall not exceed:

a.  $300,000 when the "Claim" is for death by "Wrongful Act" or Omission and $300,000 to any Claimant in any other case; and

b.  $1,000,000 for any number of "Claims" arising out of a single "Occurrence";

The most we will pay for any "Occurrence" not within the scope of Minnesota Statute Chapter 466 or any similar law shall not exceed $2,000,000.

Notwithstanding the above limitations, by accepting this Coverage, the "Covered Party" agrees that it is representing to us that it is covered by the provisions of Minnesota Statute Chapter 466 and similar statutes. If it is determined that the "Covered Party" is not covered by the provisions of Minnesota Statute Chapter 466 and similar statutes, our maximum payment shall be limited to the amount that would have been payable if the "Covered Party" had been a Minnesota County.

# SECTION II. AUTOMOBILE COVERAGES

## A.  COVERAGE A - AUTOMOBILE LIABILITY COVERAGE

1. *Coverage Agreement*

   a.  We will pay those sums that the "Covered Party" becomes legally obligated to pay as "Damages" because of "Bodily Injury" or "Property Damage" to which this coverage applies.  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION III - SUPPLEMENTARY PAYMENTS.  This coverage only applies to "Bodily Injury" or "Property Damage" which occurs during the "Coverage Period".  The "Bodily Injury" or "Property Damage" must be caused by an "Occurrence" and result from the ownership, maintenance or use of a "Covered Auto".  The "Occurrence" must take place in the "Coverage Territory".  We will have the right and duty to defend any "Suit" seeking those "Damages".  However:

      (1) The amount we will pay for "Damages" is limited as described in SECTION II.A.3. - LIMIT OF COVERAGE;

      (2) We may investigate and settle any "Claim" or "Suit" at our discretion; and

      (3) Our right and duty to defend end when we have exhausted the applicable limit of coverage in the payment of "Damages".

   b.  While a "Covered Auto" is away from the state where it is licensed, we will provide the minimum amounts and types of other coverages as required of out-of-state vehicles by the jurisdiction where the "Covered Auto" is being used.

2. *Exclusions*

   This coverage is subject to SECTION IV. GENERAL EXCLUSIONS.  In addition, this coverage does not apply to:

   a. *Airport Operations*

      "Bodily Injury" or "Property Damage" arising out of or caused or contributed to by any ownership, maintenance, operation, use or control of or responsibility for any airfield, airport, runway, hangar, building or other property or facility designed for, used, connected, associated or affiliated with or in any way related to aviation or aviation activities, but this exclusion does not apply to the maintenance or plowing of roads or parking areas.

   b. *Assumption of Liability*

      "Bodily Injury" or "Property Damage" for which the "Covered Party" is obligated to pay "Damages" by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for "Damages":

      (1) Assumed in a contract or agreement that is a "Covered Party Contract"; or

MCITCD (2005)-20

    (2) That the "Covered Party" would have in the absence of the contract or agreement.

c. *Injury to Employee or Law Enforcement Volunteer*

"Bodily Injury" to:

    (1) An employee of the "Member" arising out of and in the course or employment by the "Member"; or

    (2) A law enforcement volunteer of the "Covered Party" arising out of and in the course of performing duties related to the conduct of the "Member's" business if the volunteer is covered by workers' compensation coverage provided by the Trust while performing such duties; or

    (3) The spouse, child, parent, brother, sister or dependent of that employee or volunteer as a consequence of paragraphs (1) or (2) above, respectively.

This exclusion applies:

    (1) Whether the "Member" may be liable as an employer or in any other capacity; and

    (2) To any obligation to share "Damages" with or repay someone else who must pay "Damages" because of the injury.

This exclusion does not apply to liability assumed by the "Member" under a "Covered Party Contract".

d. *Liquor*

"Bodily Injury" or "Property Damage" for which any "Covered Party" may be held liable by reason of:

    (1) Causing or contributing to the intoxication of any person;

    (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

e.  *Racing/Demolition Derby*

"Bodily Injury" or "Property Damage" arising out of the use of an "Auto" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

f.  *Workers' Compensation*

Any obligation of the "Member" under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

3.  *Limit of Coverage*

a.  Subject to the terms of this "Coverage Document", and any endorsements hereto, and the Joint Powers Act and the By-Laws of the Minnesota Counties Insurance Act, we will pay the Limits of Coverage shown in the "Declarations" regardless of the number of:

(1)  "Covered Parties";

(2)  "Covered Autos";

(3)  "Claims" made or "Suits" brought;

(4)  Persons or organizations making "Claims" or bringing "Suits"; or

(5)  Contributions paid per "Covered Auto".

b.  The Bodily Injury and Property Damage Per Claimant Limit is the most we will pay under Section II, Coverage A for all "Damages" to any one Claimant making a Claim or bringing a "Suit".

c.  The Bodily Injury and Property Damage Per Occurrence Limit is the most we will pay under Section II, Coverage A for all Damages arising out of any one "Occurrence".

d.  Notwithstanding paragraphs a., b., and c. above, the most we will pay on any "Claim" within the scope of Minnesota Statute Chapter 466 or any similar law or any "Claim" arising from the liability of others assumed under a "Covered Party Contract" shall not exceed:

(1)  $300,000 when the "Claim" is for death by "Wrongful Act" or Omission and $300,000 to any Claimant in any other case; and

(2)  $1,000,000 for any number of "Claims" arising out of a single "Occurrence";

The most we will pay for any "Occurrence" not within the scope of Minnesota Statute Chapter 466 or any similar law shall not exceed $2,000,000.

Notwithstanding the above limitations, by accepting this Coverage, the "Covered Party" agrees that it is representing to us that it is covered by the provisions of Minnesota Statute Chapter 466 and similar statutes. If it is determined that the "Covered Party" is not covered by the provisions of Minnesota Statute Chapter 466 and similar statutes, our maximum payment shall be limited to the amount that would have been payable if the "Covered Party" had been a Minnesota County.

## B. COVERAGE PART B – PERSONAL INJURY PROTECTION

1. *Coverage Agreement*

We will pay Personal Injury Protection benefits to or for a "Covered Party" who sustains "Bodily Injury" caused by an "Occurrence" and resulting from the ownership, maintenance, or use of a "Covered Auto" as an "Auto". Personal Injury Protection benefits consist of the following benefits:

a. Medical Expenses means all reasonable expenses incurred for necessary medical, surgical, x-ray, optical, dental, chiropractic and rehabilitative services, including prosthetic devices, prescription drugs, necessary ambulance and all other reasonable transportation expenses incurred in traveling to receive covered medical benefits, hospital, extended care and nursing services, including necessary remedial treatment and services recognized and permitted under the laws of Minnesota for a "Covered Party" who relies upon spiritual means through prayer alone for healing in accordance with his religious belief; however, it does not include expenses in excess of those for a semi-private room, unless more intensive care is medically required.

b. Work Loss Means:

(1) 85% of loss of gross income resulting from the "Covered Party's" inability to work on a regular basis including the cost incurred by a "Covered Party" who is self-employed in hiring substitute employees to perform tasks which are necessary to maintain his income, which he normally performs himself, and which he cannot perform because of his injury; or

(2) Lost unemployment benefits in an amount equal to the unemployment benefits otherwise payable, if the "Covered Party":

(a) Is unemployed at the time of the injury and is receiving or is eligible to receive unemployment benefits; and

(b) Loses eligibility for unemployment benefits because of his inability to work caused by injury reduced by any income from work actually performed by the "Covered Party", or by any income he would have earned in available appropriate substitute work which he was capable of performing but unreasonably failed to undertake.

c. Essential Services Expenses.  Expenses reasonably incurred during a period commencing eight days after the date of the "Accident" and during the "Covered Party's" lifetime, in obtaining usual and necessary substitute services in lieu of those that, had he not been injured, he would have performed not for income but for the direct benefit of himself or his household; if the non-fatally injured "Covered Party" normally, as a full time responsibility, provides care and maintenance of a home, with or without children, the benefit is the reasonable value of such care and maintenance, if greater than the expense incurred.

d. Funeral Expenses.  Reasonable expenses for professional funeral and burial services including expense for cremation, or delivery under the Minnesota Uniform Anatomical Gift Act.

e. Survivor's Loss Means:

   (1) Loss, in the event of death of a "Covered Party" occurring within one year from the date of the "Accident", of contributions of money or tangible things of economic value, not including services, that his surviving dependents would have received from him for their support during their dependency had he not suffered the fatal "Bodily Injury"; and

   (2) Expenses reasonably incurred by surviving dependents after the death of a "Covered Party" in obtaining ordinary and necessary substitute services in lieu of those he would have performed for their benefit had he not suffered the fatal "Bodily Injury"; minus expenses of the surviving dependents avoided by reason of such death, provided that the dependency of the surviving spouse shall be terminated in the event such surviving spouse remarries or dies, and the dependency of a child who is not physically or mentally incapacitated from earning shall be terminated in the event he attains majority, marries or becomes otherwise emancipated, or dies.

2. *Who Is A Covered Party for Personal Injury Protection*

   a. Any "Covered Party" who sustains "Bodily Injury" while "Occupying" an "Auto", or while a pedestrian as a result of an "Accident" involving any motor vehicle or motorcycle.

   b. Any other person who sustains "Bodily Injury" while "Occupying" a "Covered Auto" with your permission, or while a pedestrian as a result of an "Accident" involving a "Covered Auto".

   c. Any other person who sustains "Bodily Injury" while "Occupying" with your permission an "Auto" not owned by, but operated by a "Covered Party", other than a public or livery conveyance, if the "Bodily Injury" results from the operation of the motor vehicle by a "Covered Party".

   d. The definition of "Covered Party" contained in SECTION VI. DEFINITIONS is incorporated by reference herein.

3.  *Exclusions*

This coverage is subject to SECTION IV. GENERAL EXCLUSIONS. In addition, we will not pay Personal Injury Protection benefits for "Bodily Injury":

a.  *Illegal Use of Vehicle*

Sustained by any person, other than a "Covered Party", arising out of the maintenance or use by such person of an "Auto" without being legally entitled to use such "Auto".

b.  *Intentional Injury/Death*

To anyone who would otherwise be entitled to receive benefits hereunder for "Bodily Injury" intentionally caused by such person or arising out of his intentionally attempting to cause "Bodily Injury", and, if any person dies as a result of intentionally causing or attempting to cause "Bodily Injury" to himself, his survivors are not entitled to any survivors' loss benefits.

c.  *Lapse of Medical Treatment*

To a "Covered Party" for Personal Injury Protection benefits otherwise payable in the event that a lapse of one year or more occurs in the period of disability and medical treatment of a "Covered Party" as a result of any one "Accident".

d.  *Loading/Unloading*

Sustained by any person if such injury arises out of conduct in the course of "Loading" or "Unloading" any "Auto" unless the conduct occurs while such person is "Occupying" such "Auto".

e.  *Auto Used as Residence or Premises*

Sustained by any person arising out of the maintenance or use of an "Auto" while located for use as a residence or premises.

f.  *Motorcycle*

Sustained by any person while "Occupying" a motorcycle.

g.  *No-Fault Coverage*

Sustained by any person arising out of the maintenance or use of an "Auto":

(1) Being used in the business of transporting persons or property; or

(2) Furnished by you,

if with respect to such vehicle the security required by the Minnesota No-Fault Automobile Insurance Act is in effect, provided that such "Bodily Injury" is sustained while not "Occupying" another involved motor vehicle; however, this exclusion does not apply to a:

(1) "Covered Auto";

(2) Commuter van as defined in the Minnesota No-Fault Automobile Insurance Act; or

(3) Vehicle being used to transport children to school or to a school sponsored activity.

h.  *Non-Covered Parties Occupying Busses/Taxis*

Sustained by any person, other than a "Covered Party", while "Occupying" a vehicle which is regularly used in the course of the business of transporting persons or property and which is one of five or more vehicles under common ownership or a vehicle owned by a government other than the State of Minnesota, its political subdivisions, municipal corporations, or public agencies, if the "Accident" occurs outside the State of Minnesota.

i.  *Nuclear Material*

Resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material.

j.  *Occupant of Non-Owned Auto*

With respect to work loss, essential services expenses, and survivors' loss, sustained by any person, other than a "Covered Party", while "Occupying" any "Auto", not owned by the "Member", which is being operated by a "Covered Party".

k.  *Other PIP Coverage*

Sustained by any person, other than a "Covered Party", if such person is entitled to Personal Injury Protection coverage as a self-insured or as an insured, or relative under the terms of any other policy with respect to such coverage.

l.  *Out-of-State Pedestrian*

Sustained by any person, other than a "Covered Party", while a pedestrian through being struck by a "Covered Auto", if the "Accident" occurs outside the State of Minnesota.

m. *Racing/Demolition Derby*

Sustained by any person in the course of a prearranged racing, speed or demolition contest, or stunting activity, or in practice or preparation therefore.

n. *Repair Business*

Sustained by any person if such injury arises out of conduct within the course of business of repairing, servicing, or otherwise maintaining "Autos" unless such conduct occurs off the business premises.

4. *Limit of Coverage*

a. Except as provided in Section c. below, regardless of the number of "Covered Parties", policies or plans of self insurance applicable, contributions paid, "Claims" made or "Covered Autos" to which this coverage applies, the Trust's liability for Personal Injury Protection benefits with respect to "Bodily Injury" sustained by any one "Covered Party" in any one "Auto" "Accident" shall not exceed $40,000 in the aggregate and subject to such aggregate:

   (1) The maximum amount payable for medical expenses shall not exceed $20,000.

   (2) The maximum aggregate amount payable for work loss, essential services expenses, funeral expenses and survivors' loss shall not exceed $20,000. Subject to this maximum aggregate:

      (a) The maximum amount payable for work loss shall not exceed $250.00 per week;

      (b) The maximum amount payable for essential services expenses shall not exceed $200.00 per week;

      (c) The maximum amount payable for funeral expenses shall not exceed $2,000;

      (d) The maximum amount payable for survivors' loss:

         (i) With respect to paragraph (1) of the definition of survivors' loss shall not exceed $200.00 per week; and

         (ii) With respect to paragraph (2) of the definition of survivors' loss shall not exceed $200.00 per week.

b. Any amount payable by the Trust under the terms of this coverage shall be reduced by:

   (1) Any amounts paid, payable or required to be provided on account of such "Bodily Injury" under any workers' compensation law; except that if the "Accident" involves an "Auto" used in a "Ride Sharing Arrangement", this coverage shall be primary;

   (2) The amount of any deductible applicable to medical expenses set forth in this coverage document, but only with respect to "Bodily Injury" sustained by a "Covered Party", provided that, if two or more such persons sustain "Bodily Injury" in the same "Auto Accident", the total amount of the deductible applicable to all of them shall not exceed the deductible amount stated in this Agreement and such amount shall be allocated equally among them;

   (3) The amount of any deductible applicable to work loss set forth in this Agreement but only with respect to "Bodily Injury" sustained by a "Covered Party".

c. Regardless of the number of persons covered, contributions paid or "Claims" made, the Trust's liability for Personal Injury Protection benefits with respect to "Bodily Injury" sustained by any one "Covered Party" in any one Auto Accident shall not exceed $40,000 in the aggregate, per "Covered Auto", and subject to each aggregate:

   (1) The maximum amount payable for medical expenses shall not exceed $20,000;

   (2) The maximum amount payable for work loss, essential services, funeral expenses and survivors' loss shall not exceed $20,000 provided that if there is more than one "Covered Auto", the aggregate amount applicable to one "Covered Auto" shall be exhausted before essential services expenses or survivors' loss will be payable under the aggregate which applies to any other "Covered Auto". Subject to this maximum aggregate:

      (a) The maximum amount payable for work loss shall not exceed $250.00 per week;

      (b) The maximum amount payable for essential services expenses shall not exceed $200.00 per week;

      (c) The maximum amount payable for funeral expenses shall not exceed $2,000;

      (d) The maximum amount payable for survivors' loss:

         (i) With respect to paragraph (1) of the definition of survivors' loss shall not exceed $200.00 per week; and

     (ii)  With respect to paragraph (2) of the definition of survivors' loss shall not exceed $200.00 per week.

d.  These limits are set forth in Minnesota Statutes for Personal Injury Protection.

5.  *Changes in Conditions*

The CONDITIONS are changed for PERSONAL INJURY PROTECTION as follows:

a.  DUTIES IN THE EVENT OF AN OCCURRENCE, CLAIM, SUIT OR WRONGFUL ACT is replaced by the following:

(1)  In the event of any "Accident", written notice containing particulars sufficient to identify the "Covered Party", and also reasonably obtainable information respecting the time, place and circumstances of the "Accident" shall be given by or on behalf of each "Covered Party" to the Trust or any of its authorized agents within six months from the date of the "Accident". Failure to provide such written notice shall not render a "Covered Party" ineligible to receive benefits unless actual prejudice is shown by the Trust and then only to the extent of the prejudice. If a "Covered Party", his or her legal representative or his or her surviving dependents shall institute legal action to recover "Damages" for "Bodily Injury" against a person or organization who is or may be liable in tort therefore, a copy of the Summons and Complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to the Trust by such "Covered Party", his or her legal representative or his or her surviving dependents;

(2)  As soon as practicable, the "Covered Party" or someone on his behalf shall give to the Trust written proof of "Claim", under oath if required, including full particulars of the nature and extent of the "Bodily Injury", treatment and rehabilitation received and contemplated, and such other information as may assist the Trust in determining the amount due and payable. The "Covered Party" shall submit to physical and mental examination by physicians selected by the Trust when and as often as the Trust may reasonably require. A "Covered Party" who has undertaken a procedure or treatment for rehabilitation or a course of rehabilitative occupational training, other than medical rehabilitation procedure or treatment, shall notify the Trust that he or she has undertaken the procedure, treatment or training within 60 days after a rehabilitation expense exceeding $1,000 has been incurred for the procedure, treatment, or training, unless the Trust knows or has reason to know of the undertaking. If the "Covered Party" does not give the required notice within the prescribed time, the Trust is responsible only for $1,000 or the expense incurred after the notice is given and within 60 days before the notice, whichever is greater, unless failure to give timely notice is the result of excusable neglect.

b.  TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US is replaced by the following:

Subject to any applicable limitations set forth in the Minnesota No-Fault Automobile Insurance Act, in the event of any payment under this coverage, the Trust is subrogated to the rights of the person to whom or for whose benefit such payments were made, to the extent of such payments, and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  Such person shall do nothing after loss to prejudice such rights.

c.  The OTHER COVERAGE OR INSURANCE Condition is replaced by the following:

In the event the "Covered Party" has other similar coverage including self-insurance available and applicable to the "Accident", the Trust shall not be liable for a greater proportion of any loss to which this coverage applies than the LIMITS OF COVERAGE hereunder bears to the sum of the applicable LIMITS OF COVERAGE of this coverage and such other coverage or insurance.

d.  The following CONDITIONS are added:

**COORDINATION, NON-DUPLICATION AND PRIORITY OF PAYMENTS**

(1)  No "Covered Party" shall recover duplicate benefits for the same elements of loss under this coverage or any similar insurance including self-insurance;

(2)  Any amount payable under any UNINSURED MOTORISTS COVERAGE afforded under this Agreement shall be reduced by the amount of any Personal Injury Protection benefits paid or payable or which would be paid or payable but for the application of a deductible under this or any other motor vehicle insurance policy because of "Bodily Injury" sustained by a "Covered Party".

**REIMBURSEMENT TO THE TRUST**

Subject to any applicable limitations set forth in the Minnesota No-Fault Automobile Insurance Act, in the event of any payment to any person under this coverage:

(1)  The Trust shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the "Bodily Injury" because of which such payment is made; and the Trust shall have a lien to the extent of such payment, notice of which may be given to the person or organization causing such "Bodily Injury", his agent, his or her insurer or a court having jurisdiction in the matter;

(2)  Such person shall hold in Trust for the benefit of the Trust all rights of recovery which he or she shall have against such other person or organization because of such "Bodily Injury";

(3) Such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such right; and

(4) Such person shall execute and deliver to the Trust instruments and papers as may be appropriate to secure the rights and obligations of such person and the Trust established by this provision.

## C. COVERAGE PART C - PHYSICAL DAMAGE COVERAGE

1. *Coverage Agreement*

   Causes of Loss

   a. We will pay for loss to a "Covered Auto" or its equipment under:

      (1) Comprehensive coverage from any cause except:

         (a) The "Covered Auto's" collision with another object; or

         (b) The "Covered Auto's" overturn.

      (2) Collision coverage caused by:

         (a) The "Covered Auto's" collision with another object; or

         (b) The "Covered Auto's" overturn.

   b. Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles.

      If you carry Comprehensive Coverage for the damaged "Covered Auto", we will pay for the following under Comprehensive Coverage:

      (1) Glass breakage;

      (2) Loss caused by hitting a bird or animal; and

      (3) Loss caused by falling objects or missiles.

      However, you have the option of having glass breakage caused by a "Covered Auto's" collision or overturn considered a "Loss" under Collision Coverage.

      For covered glass breakage, and subject to our approval, you also have the option to:

      (1) Repair;

      (2) Replace with used glass; or

      (3) Replace with new glass.

      Any coverage deductible that applies solely to the glass breakage will be waived under option (1). The deductible will also be waived under option (2) if the cost savings is equal to or greater than the deductible.

c.  Coverage Extension.

We will also pay up to $10.00 per day to a maximum of $300.00 for transportation expense incurred by you because of the total theft of a "Covered Auto" of the private passenger type. We will pay only for those "Covered Autos" for which you carry Comprehensive Coverage. We will pay for transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the "Covered Auto" is returned to use or we pay for its "Loss".

2.  *Exclusions*

This coverage is subject to SECTION IV. GENERAL EXCLUSIONS. In addition, this coverage does not apply to the following losses:

a.  Concurrent Causes Excluded: Such "Loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "Loss".

b.  Sound Equipment

We will not pay for "Loss" to any of the following:

(1)  Sound reproducing equipment unless permanently installed in a "Covered Auto";

(2)  Tapes, records, discs, or other sound reproducing devices designed for use with sound reproducing equipment;

(3)  Sound receiving equipment designed for use as a citizens' band radio, two-way mobile radio or telephone or scanning monitor receiver, including its antennas and other accessories, unless permanently installed.

c.  Wear and Tear

We will not pay for "Loss" caused by or resulting from any of the following unless caused by other "Loss" that is covered by this coverage:

(1)  Wear and tear, freezing, mechanical or electrical breakdown;

(2)  Blowouts, punctures or other road damage to tires.

3.  *Limit of Coverage*

The most we will pay for a Loss in any one "Accident" is the lesser of:

a.  The actual cash value of the damaged or stolen property as of the time of the "Loss"; or

b.  The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

4. *Deductible*

a. Subject to paragraphs b. and c. below, the following shall apply to a covered "Loss":

(1) Except for a "Hired-Auto" or a "Non-Owned Auto" that is a "Covered Auto" in accordance with 10.c. of SECTION VI. DEFINITIONS of ARTICLE TWO – Liability Coverages, our obligation to pay for, repair, return or replace damaged or stolen property for each "Covered Auto" will be reduced by the applicable coverage deductible shown for the "Covered Auto" in the schedules of this "Coverage Document" at the time of the "Loss".

(2) For a "Hired Auto" or a "Non-Owned Auto" that is a "Covered Auto" in accordance with 10.c. of SECTION VI. DEFINITIONS of ARTICLE TWO – Liability Coverages, our obligation to pay for, repair, return or replace damaged or stolen property will, depending on the coverage applicable to the "Loss", be reduced by:

(a) The largest Comprehensive Coverage deductible or the largest Collision Coverage deductible applicable to an owned "Auto" of the "Member" under this coverage part at the time of the "Loss", as shown in the schedules of this "Coverage Document"; or

(b) A $500 Comprehensive Coverage deductible or a $1,000 Collision Coverage deductible in the event the "Member" does not have an owned "Auto" covered by this coverage part at the time of the "Loss".

b. Should a single incident or event result in "Loss" to more than one "Covered Auto" of the "Member", the total amount of all Comprehensive or Collision Coverage deductibles applied to the "Loss" shall not exceed $3,000.

c. Any Comprehensive Coverage deductible shown in the "Declarations" does not apply to "Loss" caused by fire or lightning.

## D. COVERAGE PART D - UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

1. *Coverage Agreement*

   a. We will pay all sums the "Covered Party" is legally entitled to recover as "Damages" from the owner or driver of an "Uninsured Motor Vehicle" or "Underinsured Motor Vehicle" caused by an "Accident". The owner's or driver's liability for these "Damages" must result from the ownership, maintenance or use of the "Uninsured Motor Vehicle" or "Underinsured Motor Vehicle".

   b. Any judgment for "Damages" arising out of a "Suit" brought without our written consent is not binding on us.

2. *Exclusions*

   This Coverage does not apply to any of the following:

   a. Any "Claim" settled with the owner or operator of an "Uninsured Motor Vehicle" or an "Underinsured Motor Vehicle" without our consent.

   b. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation disability benefits or similar law.

   c. "Bodily Injury" sustained by any "Covered Party" while "Occupying" or struck by any vehicle, other than a motorcycle, owned by any "Covered Party" that is not a "Covered Auto".

   d. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

3. *Who is a Covered Party?*

   For Coverage Part D only, "Covered Party" means:

   a. You.

   b. Anyone else "Occupying" a:

      (1) "Covered Auto"; or

      (2) Temporary substitute for a "Covered Auto". The "Covered Auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

   c. Anyone for "Damages" he or she is entitled to recover because of "Bodily Injury" sustained by another "Covered Party".

4. *Limit of Coverage*

   a. The Limit of Coverage shown in the "Declarations" page for uninsured or underinsured motorist coverage and the rules below fix the most we will pay regardless of the number of:

      (1) "Covered Parties";

      (2) "Covered Autos";

      (3) "Claims" made or "Suits" brought;

      (4) Persons or organizations making "Claims" or bringing "Suits";

      (5) Contributions paid per "Covered Auto"; or

      (6) Vehicles involved in the "Accident".

   b. The Uninsured/Underinsured Motorist Per Claimant Limit is the most we will pay under Section II, Coverage D for all "Damages" to any one Claimant making a "Claim" or bringing a "Suit".

   c. The Uninsured/Underinsured Motorist Per Occurrence Limit is the most we will pay under Section II, Coverage D for all "Damages" arising out of any one "Occurrence".

   d. With respect to "Damages" resulting from an "Accident" with an "Uninsured Motor Vehicle", any amounts otherwise payable under this Coverage Provision shall be reduced by all sums paid for the same "Damages" by or for anyone legally responsible, including all sums paid under ARTICLE I - LIABILITY COVERAGE.

   e. With respect to "Damages" resulting from an "Accident" with an "Underinsured Motor Vehicle", the limit of coverage shall be reduced by all sums paid by or for anyone legally responsible, including all sums paid under ARTICLE I - LIABILITY COVERAGE .

   f. Any amount paid under this Coverage will reduce any amount a "Covered Party" may be paid under this "Coverage Document".

   g. In no event will a "Covered Party" be entitled to receive duplicate payment for the same elements of "Loss".

5.   *Changes in Conditions*

The GENERAL CONDITIONS are changed for UNINSURED AND UNDERINSURED MOTORISTS COVERAGE as follows:

a.   The reference in OTHER COVERAGE OR INSURANCE to other collectible insurance applies only to other collectible uninsured or underinsured motorists insurance and is replaced by the following:

(1) If a "Covered Party" sustains "Bodily Injury" while "Occupying" a "Covered Auto" you own, only the LIMIT OF COVERAGE for UNINSURED and UNDERINSURED MOTORISTS COVERAGE applicable to that "Covered Auto" will apply;

(2) If a "Covered Party" sustains "Bodily Injury" while "Occupying" a vehicle not owned by you or while not "Occupying" any vehicle, the following priorities of recovery apply:

**FIRST PRIORITY**

The policy affording UNINSURED or UNDERINSURED MOTORISTS COVERAGE to the vehicle the "Covered Party" was "Occupying" at the time of the "Accident".

**SECOND PRIORITY**

Any policy affording UNINSURED or UNDERINSURED MOTORISTS COVERAGE to the "Covered Party" as a "Member" or "Family Member".

(a) Where there is no applicable insurance available under the first priority, the maximum recovery under all policies in the second priority shall not exceed the highest applicable limit for any one vehicle under any one policy;

(b) Where there is applicable insurance available under the first priority:

(i)   The LIMIT OF COVERAGE applicable to the vehicle the "Covered Party" was "Occupying" under the policy in the first priority, shall first be exhausted; and

(ii)  The maximum recovery under all policies in the second priority shall not exceed the amount by which the highest limit for any one vehicle under any one policy in the second priority exceeds the limit applicable under the policy in the first priority.

      (c) We will pay only our share of the "Loss", not to exceed our share of the maximum recovery.  Our share is the proportion that our LIMIT OF COVERAGE bears to the total of all applicable limits in the same level of priority.

b. DUTIES IN THE EVENT OF AN OCCURRENCE, CLAIM, SUIT OR WRONGFUL ACT is changed by adding the following:

  (1) Promptly notify the police if a hit-and-run driver is involved; and

  (2) Promptly send us copies of the legal papers if a "Suit" is brought.

c. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US is changed by adding the following:

If we make any payment and the "Covered Party" recovers from another party, the "Covered Party" shall hold the proceeds in trust for us and pay us back the amount we have paid.

E.  **BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the General Conditions:

1.  *Business Auto Loss Conditions*

a.  Appraisal for Physical Damage Loss.

If you and we disagree on the amount of "Loss", either may demand an appraisal of the "Loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "Loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

(1)  Pay its chosen appraiser; and

(2)  Bear the other expenses of the appraisal and umpire equally.

b.  Duties in the Event of Accident, Claim, Suit or Loss.

(1)  In the event of "Accident", "Claim", "Suit" or "Loss", you must give us or our authorized representative prompt notice of the "Accident" or "Loss". Include:

(a)  How, when and where the "Accident" or "Loss" occurred;

(b)  To the extent possible, the names and addresses of any injured persons and witnesses.

(2)  Additionally, you and any other involved "Covered Party" must:

(a)  Assume no obligation, make no payment or incur no expense without our consent, except at your own cost;

(b)  Immediately send us copies of any demand, notice, summons or legal paper received concerning the "Claim" or "Suit";

(c)  Cooperate with us in the investigation, settlement or defense of the "Claim" or "Suit";

(d)  Authorize us to obtain medical records or other pertinent information;

(e)  Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

(3) If there is "Loss" to a "Covered Auto" or its equipment you must also do the following:

    (a) Promptly notify the police if the "Covered Auto" or any of its equipment is stolen;

    (b) Take all reasonable steps to protect the "Covered Auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the "Loss";

    (c) Permit us to inspect the "Covered Auto" and records proving the "Loss" before its repair or disposition;

    (d) Agree to examinations under oath at our request and give us a signed statement of your answers.

c. Loss Payment - Physical Damage Coverages.

At our option we may:

(1) Pay for, repair or replace damaged or stolen property;

(2) Return the stolen property, at our expense. We will pay for any damage that results to the "Auto" from the theft; or

(3) Take all or any part of the damaged or stolen property at an agreed or appraised value.

2. *Business Auto General Conditions*

a. No Benefit To Bailee - Physical Damage Coverages.

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Section.

b. Business Auto Other Insurance.

(1) For any "Covered Auto" you own, this Coverage Section provides primary coverage. For any "Covered Auto" you don't own, the coverage provided by this Coverage Section is excess over any other collectible insurance. However, while a "Covered Auto" which is a trailer is connected to another vehicle, the Liability Coverage this Coverage Section provides for the trailer is:

    (a) Excess while it is connected to a motor vehicle you do not own;

    (b) Primary while it is connected to a "Covered Auto".

(2) Regardless of the provisions of paragraph a. above, this Coverage Section's Liability Coverage is primary for any liability assumed under a "Covered Party Contract".

(3) When this Coverage Section and any other Coverage Section or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Coverage of our Coverage Section bears to the total of the limits of all the Coverage Sections and policies covering on the same basis.

c. Contribution Audit.

(1) The estimated contribution for this Coverage Section is based on the exposures you told us you would have when this coverage document began. We will compute the final contribution due when we determine your actual exposures. The estimated total contribution will be credited against the final contribution due and the "Member" will be billed for the balance, if any. If the estimated total contribution exceeds the final contribution due, the "Member" will get a refund;

(2) If this coverage document is issued for more than one year, the contribution for this Coverage Section will be computed annually based on our rates or contribution in effect at the beginning of each year of the coverage.

d. Coverage Issued By Us

If this Coverage Section and any other Coverage Section issued to you by us apply to the same "Accident", the aggregate maximum Limit of Coverage under all the Coverage Sections shall not exceed the highest applicable Limit of Coverage under any one Coverage Section.

## SECTION III. SUPPLEMENTARY PAYMENTS
- ## SECTION I. COVERAGES A, B, D AND E
- ## SECTION II. COVERAGES A, B AND C

In addition to our Limit of Coverage, we will pay for the "Covered Party":

A. Premiums on appeal bonds in any "Suit" we defend, for an amount not in excess of the applicable Limit of Coverage; we have no obligation to apply for or furnish any such bonds.

B. Premiums on bonds to release attachments in a "Suit" we defend but only for bonds up to our Limit of Coverage.

C. All costs taxed to the "Covered Party" in a "Suit" we defend.

D. All interest accruing after the entry of the judgment in a "Suit" we defend. Our duty to pay interest ends when we pay or tender our Limit of Coverage.

E. All "Claim Expenses".

F. Other reasonable expenses incurred at our request.

# SECTION IV. GENERAL EXCLUSIONS

Applicable to all Liability Coverages, the Coverage provided does not apply to:

A.  *Asbestos and Silica*

Liability, including all loss, cost or expense, directly or indirectly arising out of, resulting as a consequence of, or related to:

1.  Asbestos;

2.  Silica;

whether or not there is another cause of loss which may have contributed concurrently or in any sequence to a loss.

B.  *Contractual Liability*

"Bodily Injury" or "Property Damage" for which the "Covered Party" is obligated to pay "Damages" by reason of the assumption of liability in a contract or agreement . This exclusion does not apply to liability for "Damages":

1.  Assumed in a contract or agreement that is a "Covered Party Contract", provided the "Bodily Injury" or "Property Damage" occurs subsequent to the execution of the contract or agreement; or

2.  That the "Covered Party" would have in the absence of the contract or agreement.

C.  *Contractual Penalties, Breach of Contract*

Any "Claim" based upon breach of contract or other obligation, including an obligation arising out of a written agreement creating an obligation on behalf of a "Member" to another person or entity.  This clause specifically excludes any coverage for "Damages" or "Claim Expenses" based upon, caused by or arising from, breach of contract, cost estimate overruns on any contract or project, or any penalties for failure to comply with a contractual obligation or other duties assumed as a result of a written agreement.

D.  *Eminent Domain*

"Claims" or "Suits" based upon, caused by or arising out of the operation of the principles of eminent domain, including condemnation proceedings or inverse condemnation by whatever name called, whether such liability accrues directly against the "Covered Party" or by virtue of any agreement entered into by or on behalf of the "Covered Party".

E.  *Failure to Supply*

"Claims" or "Suits" made as a result of the "Member's" failure to supply water, gas, or electricity or the "Member's" failure to supply sufficient water, gas or electricity to meet demand.

F.   *Medical Facilities*

"Claims" or "Suits" arising out of the "Covered Party's" ownership, operation, control, direction or any other liability with respect to any hospital, nursing home or other premises providing medical services where overnight bedcare is provided.

G.   *Medical Treatment*

Any "Claims" or "Suits" for "Damages" due to:

1.   The rendering of or failure to render medical, surgical, dental, x-rays, services or treatment by a licensed practitioner of healing arts;

2.   The furnishing or dispensing of medical, dental or surgical supplies or appliances by any physician or dentist; or

3.   Any liability arising out of the "Covered Party's" ownership, operation, control or direction of any hospital, nursing home or other premises providing medical services where overnight bedcare or emergency medical care is regularly provided, unless specifically endorsed herein.

4.   The handling of dead bodies; or

5.   Performing of autopsies.

Exclusions 1. and 2. above do not apply to services or treatments rendered or provided by emergency medical technicians, paramedics, public safety employees, psychologists, dental hygienists, licensed nurses, public health nurses or home health aides while they are acting in the course and scope of their authorized capacities as employees, volunteers or elected or appointed officials of the "Covered Party". This exception shall not apply to any clinic where emergency medical services are regularly provided.

Exclusion 4. above does not apply to the following persons while they are acting in the course and scope of their authorized capacities as employees, volunteers or elected or appointed officials of the "Member": coroners and medical examiners unable to access any other liability coverage or insurance to protect themselves against "Claims" or "Suits" from the handling of dead bodies; emergency medical services personnel; sheriff, chief law enforcement officials and peace officers exercising powers of arrest; guards at correctional institutions; auxiliary or reserve peace officers or posse members under the direct supervision of the sheriff.

H.   *General Assistance Medical Care and County-Based Purchasing for Medical Assistance*
"Claims" or "Suits" for "Damages" caused by or arising from the following activities of General Assistance Medical Care and County-Based Purchasing for Medical Assistance, as authorized by Minnesota Statutes Chapters 256B.69 and 256B.692, or any similar insurance, self-insurance or coverage program, plan, pool, association, organization or fund:

1. Determinations regarding client/participant treatment, benefits or services. However, coverage is provided for the defense of "Claims" or "Suits" for "Damages", but not for the "Damages" themselves, that are caused by or arise from determinations regarding the eligibility of a person or persons to participate in General Assistance Medical Care, Medical Assistance or a similar program;

2. Program financing; and

3. Procurement or maintenance of reinsurance or stop-loss coverage.

I. *Non-Monetary Relief*

"Claims" or "Suits" against a "Covered Party" for non-monetary relief or remedy such as, but not limited to, criminal prosecutions and proceedings, elections, actions for injunction or declaratory judgment, mandamus actions, actions to enforce or invalidate ordinances, zoning restrictions or contracts or actions to require compliance with applicable law and regulations or seeking exemption therefrom. This exclusion does not apply to "Claims" or "Suits" alleging open meeting or government data practices violations by a "Covered Party".

J. *Nuclear Energy Liability*

1. "Claims" or "Suits":

    a. For "Bodily Injury" or "Property Damage":

        (1) With respect to which a "Covered Party" is also a "Covered Party" under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be a "Covered Party" under such a policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "Hazardous Properties" of "Nuclear Material" and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "Covered Party" is, or had this coverage document not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    b. Under any Medical Payments coverage, to expenses incurred with respect to "Bodily Injury" resulting from the "Hazardous Properties" of "Nuclear Material" and arising out of the operation of a "Nuclear Facility" by any person or organization.

    c. For "Bodily Injury" or "Property Damage" resulting from the "Hazardous Properties" of "Nuclear Material", if:

(1)  The "Nuclear Material" (a) is at any "Nuclear Facility" owned by, or operated by or on behalf of, a "Covered Party" or (b) has been discharged or dispersed therefrom;

(2)  The "Nuclear Material" is contained in "Spent Fuel" or "Waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any "Covered Party"; o

(3)  The "Bodily Injury" or "Property Damage" arises out of the furnishing by a "Covered Party" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "Nuclear Facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "Property Damage" to such "Nuclear Facility" and any property thereat.

2.    As used in this exclusion:

"Hazardous Properties" include radioactive, toxic or explosive properties;

"Nuclear Material" means "Source Material", "Special Nuclear Material" or "By-Product Material";

"Source Material", "Special Nuclear Material," and "By-Product Material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent Fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "Nuclear Reactor";

"Waste" means any waste material (a) containing "By-Product Material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "Source Material" content and (b) resulting from the operation by any person or organization of any "Nuclear Facility" included under the first two paragraphs of the definition of "Nuclear Facility".

"Nuclear Facility" means any:

(a)  "Nuclear Reactor";

(b)  Equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "Spent Fuel" or (3) handling, processing or packaging "Waste";

(c)  Equipment or devise used for the processing, fabricating or alloying of "Special Nuclear Material" if at any time the total amount of such material in the custody of the "Covered Party" at the premises where such equipment or devise is located consist of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d)  Structure, basin, excavation, premises or place prepared or used for the storage or disposal of "Waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear Reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property Damage" includes all forms of radioactive contamination of property.

K.  *Pollution Exclusion*

1.  This coverage does not apply to:

a.  "Bodily Injury" or "Property Damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "Pollutants";

1)  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "Covered Party";

2)  At or from any premises, site or location which is or was at any time used by or for any "Covered Party" or others for the handling, storage, disposal, processing or treatment of "Waste";

3)  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as "Waste" by or for any "Covered Party" or any person or organization for whom you may be legally responsible; or

4)  At or from any premises, site or location on which any "Covered Party" or any contractors or subcontractors working directly or indirectly on any "Covered Party's" behalf are performing operations:

(a)  If the "Pollutants" are brought on or to the premises, site or location in connection with such operations by such "Covered Party", contractor or subcontractor; or

(b)  If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "Pollutants".

Subparagraphs 1) and 4) (a) do not apply to "Bodily Injury" or "Property Damage" arising out of heat, smoke or fumes from a "Hostile Fire".

b.  Any loss, cost or expense arising out of any:

1) Request, demand or order that any "Covered Party" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "Pollutants"; or

2) "Claim" or "Suit" by or on behalf of a governmental authority for "Damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "Pollutants".

2.   Under Coverage B – "Personal Injury" this coverage does not apply to "Personal Injury" or "Advertising Injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "Pollutants" at any time.

3.   Under Coverage D - Public Officials Liability this coverage does not apply to any:

a.   "Claim" arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, chemicals, liquids, gases, "Waste" materials or other irritants, contaminants or "Pollutants" into or upon land, atmosphere or water.

b.   Request, demand or order to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effect of "Pollutants".

4.   As used in this exclusion:

"Hostile Fire" means a fire which becomes uncontrollable or breaks out from where it was intended to be.

"Pollutants" includes, but is not limited to, any:

a. Solid;

b. Liquid;

c. Gaseous; or

d. Thermal

irritant or contaminant, including:

a. Smoke;

b. Vapor;

c. Soot;

d. Fumes;

e. Acids;

    f.  Alkalis;

    g.  Chemicals;

    h.  "Waste"; or

    i.  Any unhealthy or hazardous building materials, including, but not limited to, "Asbestos" and lead products and materials containing lead.

    "Waste" includes materials to be recycled, reconditioned or reclaimed.

L.  *Strikes, Riots, Civil Commotion*

    Any "Claim" arising out of strikes, riots or civil commotion.

M.  *Utilities*

    To any liability arising out of the activities of or with respect to:

    1.  Any utility authority or other authority (which shall not include water and/or sewage services provided by a "Covered Party"); or

    2.  Any gas or electric utility, service or department of the "Covered Party", unless the utility, service, authority or department is specifically endorsed on this "Coverage Document".

N.  *War*

    All loss, cost or expense directly or indirectly arising out of, resulting as a consequence of or related to "War". "War", as utilized herein, shall mean war whether or not declared, civil war, martial law, insurrection, revolution, invasion, bombardment or any use of military force, usurped power or confiscation, nationalization or damage of property by any government, military or other authority.

    This exclusion shall apply whether or not there is another cause of loss which may have contributed concurrently or in any sequence to a loss.

O.  *Terrorist Activity*

    All loss, cost or expense arising out of or related to, either directly or indirectly, any "Terrorist Activity," as defined herein, and any action taken to hinder, defend against or respond to any such activity. This exclusion applies regardless of any other cause or event that in any way contributes concurrently or in any sequence to the loss, cost or expense.

    1.  "Terrorist Activity" shall mean any deliberate, unlawful act that:

        a.  Is declared by any authorized governmental official to be or to involve terrorism, terrorist activity or acts of terrorism; or

b. Includes, involves, or is associated with the use or threatened use of force, violence or harm against any person, tangible or intangible property, the environment, or any natural resources, where the act or threatened act is intended, in whole or in part, to:

1) Promote, further or express opposition to any political, ideological, philosophical, racial, ethnic, social or religious cause or objective; or

2) Influence, disrupt or interfere with any government related operations, activities or policies; or

3) Intimidate, coerce or frighten the general public or any segment of the general public; or

4) Disrupt or interfere with a national economy or any segment of a national economy; or

c. Includes, involves, or is associated with, in whole or in part, any of the following activities, or the threat thereof:

1) Hijacking or sabotage of any form of transportation or conveyance, including but not limited to spacecraft, satellite, aircraft, train, vessel, or motor vehicle;

2) Hostage taking or kidnapping;

3) The use or threatened use of, or release or threatened release of any nuclear, biological, chemical or radioactive agent, material, device or weapon;

4) The use of any bomb, incendiary device, explosive or firearm;

5) The interference with or disruption of basic public or commercial services and systems, including but not limited to the following services or systems: electricity, natural gas, power, postal, communications, telecommunications, information, public transportation, water, fuel, sewer or waste disposal;

6) The injuring or assassination of any elected or appointed government official or any government employee;

7) The seizure, blockage, interference with, disruption of, or damage to any government buildings, institutions, functions, events, tangible or intangible property or other assets; or

8) The seizure, blockage, interference with, disruption of, or damage to tunnels, roads, streets, highways, or other places of public transportation or conveyance.

2. Any of the activities listed in section 1.c. above shall be considered "Terrorist Activity" except where the foregoing activities or threats thereof were motivated solely by personal objectives of the perpetrator that are unrelated, in whole or in part, to any intention to:

a. Promote, further or express opposition to any political, ideological, philosophical, racial, ethnic, social or religious cause or objective; or

b. Influence, disrupt or interfere with any government related operations, activities or policies; or

c. Intimidate, coerce or frighten the general public or any segment of the general public; or

d. Disrupt or interfere with a national economy or any segment of a national economy.

P. *Intentional Fires*

"Claims" or "Suits" arising out of intentional fires which are set, controlled or in any way managed by the "Covered Party" on property of others.

Q. *Fungus*

All loss, cost or expense directly or indirectly arising out of, resulting from or in any manner related to "Fungal Pathogens" or bacteria whether or not there is another cause of loss which may have contributed concurrently or in any sequence to a loss.

"Fungal Pathogens" as utilized herein, shall mean any fungus or mycota or any byproduct or type of infestation produced by such fungus or mycota, including but not limited to, mold, mildew, mycotoxins, spores or any biogenic aerosols.

# SECTION V. GENERAL CONDITIONS

## A. DEFENSE AND SETTLEMENT

1. *Claim*

   The Trust shall have the right and duty to defend any "Claim" or "Suit" against the "Covered Party" seeking "Damages" which are payable under the terms of this "Coverage Document". The Trust shall have sole authority to assign defense counsel to defend a "Claim" or "Suit" against the "Covered Party". The Trust's duty to defend will end when it tenders the applicable limit of coverage. Following a determination that no covered "Claims" remain in the action, the Trust will end its duty to defend any "Claim" or "Suit". If the Trust ends its duty to defend, the "Member" will be provided a 30-day notice.

2. *Investigation*

   The Trust shall have the right to make any investigation it deems necessary.

3. *Settlement*

   The Trust shall have full authority to administer, defend and settle all "Claims" covered under this "Coverage Document" except that:

   a) The Trust shall notify the "Member" if at any time during the course of the defense of a "Claim" it is determined that any portion of the "Claim" is not covered under the terms of this "Coverage Document". If a portion of a "Claim" is not covered under the terms of this "Coverage Document" the "Member" may participate in the settlement of such "Claim", but only to the extent of the portion of the "Claim" which is not covered.

   b) If the "Covered Party" objects to any settlement or compromise recommended by the Trust and acceptable to the Claimant and elects to contest the "Claim", "Suit" or proceeding, then the Trust's liability shall not exceed the amount for which the Trust would have been liable for "Damages" and "Claim Expenses" if the "Claim" or "Suit" or proceeding had been so settled or compromised, when and as so recommended, and the Trust shall have no liability for "Claim Expenses" accruing thereafter and the Trust shall have the right to withdraw from the further defense thereof by tendering control of said defense to the "Covered Party".

4. *Limits*

   It is further provided that the Trust shall not be obligated to pay any "Claim", judgment, award or "Claim Expenses", or to undertake or continue defense of any "Suit" or proceeding after the Trust's applicable Limit of Coverage has been exhausted by payment of judgments, awards, settlements, or after deposit of the Trust's applicable Limit of Coverage in a court of competent jurisdiction, and that in such a case, the Trust shall have the right to withdraw from the further defense thereof by tendering control of said defense to the "Covered Party".

## B. DEFINED WORDS

Words or phrases which appear in this "Coverage Document" which are defined in the Definition Section or in the Coverage Sections of this "Coverage Document" shall have meaning as set forth therein. The use or lack of use of (1) bold type, (2) initial letter or full capitalization, (3) enclosure within quotation marks, or (4) other indices usually associated with a definition, shall not affect the meaning to be attributed to words or phrases.

## C. DUTIES IN THE EVENT OF AN OCCURRENCE, CLAIM, SUIT OR WRONGFUL ACT

1. You must see to it that we are notified promptly of an "Occurrence" or "Wrongful Act" which may result in a "Claim" or "Suit". To the extent possible, notice should include:

   a. How, when and where the "Occurrence" or "Wrongful Act" took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the "Occurrence" or "Wrongful Act".

2. If a "Claim" is made or "Suit" is brought against any "Covered Party", you must see to it that we receive written notice of the "Claim" or "Suit" as soon as practicable.

3. You and any other involved "Covered Party" must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "Claim" or "Suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation, settlement or defense of the "Claim" or "Suit"; and

   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "Covered Party" because of injury or damage to which this coverage may also apply.

No "Covered Party" will, except at his/her own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without consent of the Trust.

## D. LEGAL ACTION AGAINST MCIT

1. No one may bring legal action against the Minnesota Counties Insurance Trust under this "Coverage Document" unless the action is brought within two (2) years after the date on which the loss or damage occurred.

2. In the event that any dispute or controversy between the parties arises out of, or is related to, this "Coverage Document", such dispute or controversy shall be subject to the exclusive jurisdiction of the Minnesota District Court in and for Ramsey County, Minnesota.

MCITCD (2005)-54

1. No person or organization has a right under this "Coverage Document" to join us as a party or otherwise bring us into a "Suit" asking for "Damages" from a "Covered Party".

## E. RECOVERIES

If the "Covered Party" has rights to recover all or part of any payment we have made under this "Coverage Document", those rights are transferred to us. The "Covered Party" must do nothing after loss to impair them. At our request, the "Covered Party" will bring "Suit" or transfer those rights to us and help us enforce them.

The "Member" must notify us or we must notify the "Member" promptly if either receives a recovery for a "Loss" which we have paid.

The proceeds from an auto "Loss" recovery are to be disbursed according to Minnesota Statute 72A.201, subdivision 6, paragraph (6).

The proceeds from any other "Loss" recovery are to be disbursed in the following order:

1. The costs incurred by either party in making the recovery are to be reimbursed first;

2. We are entitled to the surplus up to the amount that we have paid for the "Loss";

3. The "Member" may then keep any excess.

## F. INSOLVENCY

Insolvency of the "Member" will not relieve us of our obligations under this "Coverage Document".

## G. AUDITS, INSPECTIONS AND SURVEYS

1. The Trust shall be permitted but not obligated to inspect the "Covered Party's" property and operations at any time. Neither the Trust's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the "Covered Party" or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule, or regulation.

2. The Trust may examine and audit the "Covered Party's" books and records at any time during the "Coverage Period" and extensions thereof and within three years after the final termination of Coverage.

## H. CHANGES, CANCELLATION AND TERMINATION

Coverage changes, cancellation, or termination shall be made only in accordance with the Trust By-Laws and Joint Powers or Participation Agreement. This "Coverage Document" and the Trust By-Laws and Joint Powers or Participation Agreement contain all the agreements between you and us concerning the coverage afforded. The "Coverage Document's" terms can be amended or waived only by endorsement issued by us and made a part of this "Coverage Document".

MCITCD (2005)-55

I. **REPRESENTATION**

By accepting this "Coverage Document", you agree:

1. The statements in the "Declarations" are accurate and complete;

2. Those statements are based upon representations you made to us;

3. We have issued this "Coverage Document" in reliance upon your representations,

4. You have received, reviewed, accepted, executed and agree to all the provisions of the Trust By-Laws and Joint Powers or Participation Agreement;

5. You are an entity entitled to be protected by the limitations on liability under Minnesota Statute 466; and

6. To pay any contributions related to the coverage provided.

J. **SEPARATION OF COVERED PARTIES**

Except with respect to the Limits of Coverage and any right or duties specifically assigned to the "Member", this coverage applies:

1. As if each "Covered Party" were the only "Covered Party"; and

2. Separately to each "Covered Party" against whom "Claim" is made or "Suit" is brought.

K. **DEDUCTIBLE**

It is agreed that:

1. The Trust's obligation under this Coverage Section to pay "Damages" on behalf of a "Member" shall be subject to the Limit of Coverage stated herein less the stated deductible amount.

2. The deductible amounts stated in the "Declarations" apply:

   a. Separately to each Coverage Section applicable to an "Occurrence", "Accident", "Wrongful Act", "Claim" or "Suit";

   b. To all "Damages" and "Claims Expense" as a result of that "Occurrence", "Accident", "Wrongful Act", "Claim" or "Suit".

3. The terms of these Coverage Provisions, including those with respect to (1) the Trust's rights and duties with respect to the defense of "Suits" and (2) the DUTIES IN THE EVENT OF AN OCCURRENCE, CLAIM, SUIT, OR WRONGFUL ACT apply irrespective of the application of the deductible amount.

4. The Trust may pay any part or all of the deductible amount to effect settlement of any "Claim" and upon notification of the action taken, the "Member" shall promptly reimburse the Trust for such part of the deductible amount as has been paid by the Trust.

## L. OTHER COVERAGE OR INSURANCE

If coverage or insurance is available to a "Covered Party" for a "Claim" we cover under Coverage Parts A, B or D of Section I of this "Coverage Document", our obligations are limited as follows:

1. *Primary Coverage*

   This coverage is primary except when 2. below applies. If this coverage is primary, our obligations are not affected unless any of the other coverage or insurance is also primary. Then, we will share with all that other coverage or insurance by the method described in 3. below.

2. *Excess Coverage*

   This coverage is excess over any other coverage or insurance, whether primary, excess, contingent or on any other basis:

   a. That is Fire, Extended Coverage, Builders' Risk, Installation Risk or similar coverage for "Your Work";

   b. That is Fire insurance for premises rented to you; or

   c. If the "Loss" arises out of the maintenance or use of aircraft, "Autos" or watercraft to the extent not subject to SECTION I - COVERAGE A, Exclusion c.

   When this coverage or insurance is excess, we will have no duty to defend any "Claim" or "Suit" that any insurer has a duty to defend. If no other insurer or coverage provider defends we will undertake to do so but we will be entitled to the "Covered Party's" rights against all those other insurers or coverage providers.
   When this coverage is excess over other coverage or insurance, we will pay only our share of the "Loss", if any, that exceeds the sum of:

   a. The total amount that all such other coverage or insurance would pay for the "Loss" in the absence of this coverage; and

   b. The total of all deductible and self-insured amounts under all that other coverage or insurance.

We will share the remaining Loss, if any, with any other coverage or insurance that is not described in this EXCESS COVERAGE provision and was not bought specifically to apply in excess of the Limits of Coverage shown in the "Declarations" of this "Coverage Document".

3.  *Method of Sharing*

If all of the other coverage or insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer or coverage provider contributes equal amounts until it has paid its applicable Limit of Coverage or none of the loss remains, whichever comes first. If any of the other coverage or liability insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's or coverage provider's share is based on the ratio of its applicable Limit of Coverage to the total applicable Limit of Coverage of all insurers.

## M.  NOT A WAIVER OF IMMUNITY OR LIMIT OF LIABILITY

Membership in the Trust, acceptance of the terms of this "Coverage Document" or execution of the Joint Powers or Participation Agreement is not intended to be, nor is it the purchase of liability insurance within the scope of Minnesota Statute 466.06. "Covered Parties" shall enjoy such immunity as is conferred by "Law" to the full extent of such "Law", including, but not limited to, those set forth in Minnesota Statutes Chapter 466. Nothing contained in the Joint Powers or Participation Agreement, Trust By-Laws or Trust "Coverage Document" shall constitute a waiver of any immunities by "Law", nor a waiver of the limits of governmental liability under "Law".

## SECTION VI. DEFINITIONS

1. "Accident" includes continuous or repeated exposure to the same conditions resulting in "Bodily Injury" or "Property Damage".

2. "Administration" means:

   a. Handling of records in connection with the "Member's" "Employee Benefit Programs";

   b. Effecting enrollment, termination or cancellation of employees under the "Member's" "Employee Benefit Programs";

   providing all such acts are authorized by the "Member".

3. "Advertising Injury" means injury arising out of one or more of the following:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

4. "Asbestos" means the mineral in any form, including but not limited to fibers or dust.

5. "Asbestos Hazard" means:

   a. An actual exposure or threat of exposure to the harmful properties of "Asbestos"; or

   b. The presence of "Asbestos" in any place, whether or not within a building or structure.

6. "Auto" or "Automobile" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment, but "Auto" does not include "Mobile Equipment".

7. "Bodily Injury" means bodily injury, mental injury, mental anguish, shock, disability, sickness or disease sustained by a person, including death resulting from any of these at any time.

8. "Claim" means:

   a. A demand received by a "Covered Party" for money or services which may include the service of "Suit" against a "Covered Party"; or

   b. A complaint to the Minnesota Department of Human Rights, the EEOC or any local civil or human rights commission.

9. "Claim Expenses" means all allocated expenses, including attorneys' fees, (those expenses applicable to a particular "Claim" but do not include "Claims" service fees paid to the "Claims" subcontractor) incurred by the Trust, or by a "Covered Party" with the Trust's consent, in the investigation, negotiation, arbitration, or settlement of any "Claim" or "Suit". "Claim Expenses" does not include salaries and expenses of the employees of the "Covered Party".

10. "Covered Auto" means:

   a. Any "Auto" shown in the schedules of this "Coverage Document", and owned "Autos" you acquire after the beginning of the "Coverage Period". However, these "Autos" must be reported to us within 30 days after you acquire the "Autos". An additional contribution may be payable by you.

   b. "Mobile Equipment" while being carried or towed by a "Covered Auto".

   c. Any "Hired Auto" or "Non-Owned Auto", except in Section II, Coverage Part C - Physical Damage Coverage where a "Hired Auto" or "Non-Owned Auto" is a "Covered Auto" only if it is:

      (1) Other than a law enforcement "Auto";

      (2) Owned by a public entity; and

      (3) Used by you not more than 30 calendar days during this "Coverage Period".

11. "Covered Party" means:

   a. The entity named in the "Declarations".

   b. Each of the following is a "Covered Party", but only for acts within the scope of their employment by or duties on behalf of the "Member", in their official capacity:

      (1) Any elected or appointed official of the "Member";

      (2) Any employee or authorized volunteer of the "Member";

      (3) Any person officially appointed by the "Member" to a Board or Commission:

         (a) Of the "Member"; or

         (b) As authorized by "Law"; or

      (4) Any "Law Enforcement Personnel" of the "Member".

      (5) With respect to ARTICLE TWO, SECTION II., COVERAGE PART A only: Officials, employees and volunteers of any public entity while using, with "Member" permission, a "Covered Auto" on behalf of, or in conjunction with, the "Member".

"Covered Party" does not include foster parent(s) or respite care provider(s) by whatever name.

12. "Covered Party Contract" means:

    a.  A lease of premises;

    b.  A sidetrack agreement;

    c.  An easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade;

    d.  An indemnification of a governmental entity as required by "Law", except in connection with work for a municipality;

    e.  An elevator maintenance agreement; or

    f.  That part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay "Damages" because of "Bodily Injury" or "Property Damage" to a third person or organization, if the contract or agreement is made prior to the "Bodily Injury" or "Property Damage". Tort liability means a liability that would be imposed by "Law" in the absence of any contract or agreement.

    A "Covered Party Contract" does not include that part of any contract or agreement:

    (1)  That indemnifies a railroad for "Bodily Injury" or "Property Damage" arising out of construction or demolition operations, within 50 feet of any railroad or trestle, tracks, road beds, tunnel, underpass or crossing;

    (2)  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        (a)  Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

        (b)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

    (3)  Under which the "Covered Party", if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the "Covered Party's" rendering or failing to render professional services, including those listed in f. (1) above and supervisory, inspection or engineering services; or

    (4)  That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

13. "Coverage Document" means this document insofar as it relates to the coverage provided, unless the context indicates otherwise.

14. "Coverage Period" means the period from 12:01 a.m. central standard time of the effective date to 12:01 a.m. central standard time of the expiration date shown in the "Declarations" of this "Coverage Document".

15. "Coverage Territory" means:

   a. Within the United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. Except with respect to liability resulting from the ownership, maintenance or use of "Autos", all parts of the world if:

      (1) The injury or damage arises out of;

         (a) Goods or products made or sold by you in the territory described in a. above; or

         (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

      (2) The "Covered Party's" responsibility to pay "Damages" is determined in a "Suit" on the merits, in the territory described in a. above, or in a settlement we agree to.

16. "Damages" means monetary judgment, exemplary or punitive damages, award, award of attorneys fees but only those arising out of a covered "Claim" or "Suit", prejudgment interest thereon or settlement but does not include fines, civil penalties or "Damages" for which insurance coverage is prohibited by "Law".

17. "Declarations" means the document which sets forth information that identifies the "Member", the types of coverage to be provided by the Trust, the amount of any deductible, effective date and expiration date of coverages, the Limits of Coverage of the Trust including any aggregate limit or any sublimit, and such other information and matters as determined by the Trust.

18. "Employee Benefit Programs" means group life insurance, group health insurance, group dental insurance or disability benefits insurance, deferred compensation plan, or other benefit program administered by the "Member".

19. "Family Member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

20. "Hired Auto" means an "Auto" not owned by the "Member" which is used under contract, on behalf of, or loaned to, the "Member" provided such "Auto" is not owned by or registered in the name of:

   a. An officer, director, elected or appointed official, duly authorized volunteer, or any participant of a board or commission of the "Member"; or

MCITCD (2005)-62

b.  An employee or agent of the "Member" who is granted an operating allowance of any sort for the use of such "Auto".

21. "Impaired Property" means tangible property other than "Your Product" or "Your Work" that cannot be used or is less useful because:

a.  It incorporates "Your Product" or "Your Work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.  You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by:

(1)  The repair, replacement, adjustment or removal of "Your Product" or "Your Work"; or

(2)  Your fulfilling the terms of the contract or agreement.

22. "Law" means all governmental statutes, laws, ordinances, rules, regulations or other similar enactments having the force or effect of law and judicial or administrative interpretations thereof.

23. "Law Enforcement Activities" means operations or activities engaged in or conducted in furtherance of law enforcement.

24. "Law Enforcement Personnel" means the following personnel:

a.  Those who deal directly with the public and exercise general powers of arrest. Included in this category are:

(1)  Sheriff/Chief Law Enforcement Official exercising powers of arrest; and

(2)  Peace officers exercising powers of arrest.

b.  Those who do not deal directly with the public or only exercise limited power of arrest under the direct supervision of a certified officer.  Included in this category are:

(1)  Guards at correctional institutions;

(2)  Auxiliary or reserve peace officers or posse members under the direct supervision of the Sheriff;

(3)  Court Security or Bailiffs; and

(4)  Civil Process Officers.

c.  Those who do not exercise power of arrest and whose duties are only administrative in nature.  Included in this category are:

(1)  Commissioners;

    (2) Auditors;

    (3) Administrator/Coordinator;

    (4) Auxiliary or reserve law enforcement officers, posse members or first responders under the direct supervision of the sheriff who do not exercise powers of arrest;

    (5) Coroner;

    (6) School crossing guards/humane officers/crime prevention officers; and

    (7) Probation and Parole officers.

  d.  Those whose ordinary duties are only indirectly related to the enforcement of criminal laws.  Included in this category are:

    (1) Clerical Staff/Fingerprinting/License examination;

    (2) Stenographic Personnel/Food Service/Photographic;

    (3) Dispatcher/Record Keeping;

    (4) Public Health Nurses; and

    (5) Social Services and Case Workers.

  e.  Police dogs and horses.

25. "Loading" or "Unloading" means the handling of property:

  a.  After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "Auto";

  b.  While it is in or on an aircraft, watercraft or "Auto"; or

  c.  While it is being moved from an aircraft, watercraft or "Auto" to the place where it is finally delivered; but "Loading" or "Unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "Auto".

26. "Loss" means direct and accidental loss or damage.

27. "Member" means the entity named in the "Declarations" including any department, subdivision, committee, commission or board under its jurisdiction, control and direction.

28. "Mobile Equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent which are not licensed for road use;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   (1) Power cranes, shovels, loaders, diggers or drills; or

   (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1) Air compressors, pumps and generators including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (2) Cherry pickers and similar devices used to raise or lower workers.

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "Mobile Equipment" but will be considered "Autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing;

      (c) Street cleaning;

      (d) Fire fighting.

   (2) Cherry pickers and similar devices mounted on "Automobile" or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

29. "Non-Owned Auto" means only those "Autos" you do not own, lease, hire or borrow which are used in connection with your business. This includes "Autos" owned by:

a. Your elected or appointed officials;

MCJTCD (2005)-65

   b.  Your employees;

   c.  Duly authorized volunteers; or

   d.  "Family Members" of a., b. or c. above;
     but only while used by a., b. or c. above in the scope of their duties as an official of the "Member", employment or authorized volunteer duties.

30. "Occupying" means in or upon, entering into or alighting from.

31. "Occurrence" means an "Accident", including continuous or repeated exposure to substantially the same general harmful conditions. "Occurrence" includes intentional acts, including but not limited to assault and battery, committed by "Law Enforcement Personnel" of the "Member" while in the performance of "Law Enforcement Activities".

32. "Person" means a natural person, partnership, association, corporation, legal representative, trustee, trustee in bankruptcy, receiver, and the State of Minnesota, other states or the United States government and their departments, agencies and political subdivisions.

33. "Personal Injury" means injury, other than "Bodily Injury", arising out of one or more of the following:

   a.  False arrest, detention or imprisonment;

   b.  Malicious prosecution;

   c.  Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

   d.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e.  Oral or written publication of material that violates a person's right of privacy;

   f.  False, erroneous or improper service of civil papers;

   g.  Assault or Battery.

34. "Products/Completed Operations Hazard" includes all "Bodily Injury" and "Property Damage" occurring away from premises you own or rent and arising out of "Your Product" or "Your Work" except:

   a.  Products that are still in your physical possession; or

   b.  Work that has not yet been completed or abandoned.

"Your Work" will be deemed completed at the earliest of the following times:

   a. When all of the work called for in your contract has been completed;

   b. When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

   c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   a. This hazard does not include "Bodily Injury" or "Property Damage" arising out of:

     (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "Loading" or "Unloading" of it;

     (2) The existence of tools, uninstalled equipment of abandoned or unused materials;

     (3) Products or operations for which the classification in this Coverage Section or in our manual of rules includes products or completed operations.

35. "Property Damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property; or

   b. Loss of use of tangible property that is not physically injured.

36. "Ride Sharing Arrangement" means the transportation of persons, for a fee or otherwise, in an "Auto" when the transportation is incidental to another purpose of the driver. The term includes the forms of shared transportation known as car pools, commuter van pools and bus pools whether or not furnished by an employer. It does not include transportation of employees by an employer from one place to another.

37. "Suit" means a civil proceeding in which "Damages" because of "Bodily Injury", "Property Damage", "Personal Injury", "Advertising Injury" or a "Wrongful Act" to which this coverage applies are alleged.

38. "Underinsured Motor Vehicle" means a land motor vehicle or trailer for which the sum of all liability bonds or policies at the time of an "Accident" provides a limit that is less than the amount an injured person is legally entitled to recover as "Damages" caused by the "Accident".

However, "Underinsured Motor Vehicle" does not include any vehicle:

a. For which a liability bond or policy applies at the time of the "Accident" but its limit for "Bodily Injury" liability is less than the minimum limit for "Bodily Injury" liability specified by the Minnesota No-Fault Automobile Insurance Act.

b. Owned by a governmental unit or agency.

c. Designed for use mainly off public roads while not on public roads.

39. "Uninsured Motor Vehicle" means a land motor vehicle or trailer

a. For which no liability bond or policy at the time of an "Accident" provides at least the amounts required by the applicable law where a "Covered Auto" is principally garaged;

b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

c. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must:

(1) Hit a "Covered Party", a "Covered Auto" or a vehicle a "Covered Party" is "Occupying"; or must

(2) Cause an "Accident" resulting in "Bodily Injury" to a "Covered Party", a "Covered Auto" or a vehicle a "Covered Party" is "Occupying".

However, "Uninsured Motor Vehicle" does not include any vehicle:

(a) Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and can not provide the amounts required by that motor vehicle law;

(b) Owned by a governmental unit or agency; or

(c) Designed for use mainly off public roads while not on public roads.

40. "Wrongful Act" means any actual or alleged error or misstatement or act of omission or neglect or breach of duty including misfeasance, malfeasance or nonfeasance including violation of civil rights, discrimination (unless coverage thereof is prohibited by law), but only with respect to liability other than for fines and penalties imposed by law and improper service of process, by the "Covered Party" in their official capacity, individually or collectively, or any matter claimed against them solely by reason of their having served or acted in an official capacity. All "Claims" and "Damages" arising out of the same or substantially same or continuous or repeated "Wrongful Act" shall be considered as arising out of one "Wrongful Act".

41. "Your Product" means:

    a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1)  You;

        (2)  Others trading under your name; or

        (3)  A person or organization whose business or assets you have acquired; and

    b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your Product" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. and b. above.

"Your Product" does not include vending machines or other property rented to or located for the use of others but not sold.

42. "Your Work" means:

    a.  Work or operations performed by you or on your behalf; and

    b.  Materials, parts or equipment furnished in connection with such work or operations.

"Your Work" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. or b. above.

# HERBICIDE/PESTICIDE APPLICATION COVERAGE

## PROPERTY DAMAGE LIABILITY

## ENDORSEMENT

This endorsement modifies coverage provided under the following:

1. Article Two, Section IV, General Exclusion K Pollution is changed as follows:

   Subject to 3. Schedule Limits of Coverage (following), subparagraphs 1. and 4. (b) of paragraph B of the General Exclusions do not apply to "Property Damage" caused by or arising from the application of chemical herbicide or pesticides by or on behalf of the "Member".

2. Additional exclusions - Article Two, Section IV, General Exclusions.

   This coverage does not apply to:

   a. "Claims" or "Suits" for "Damages" for "Property Damage" caused by or arising from the "Member's" intentional use of a chemical herbicide or pesticide in a manner not in accordance with the manufacturer's specifications.

   b. "Claims" or "Suits" for "Damages" for "Property Damage" caused by or arising from the "Member's" intentional violation of any federal, state, or local law, ordinance or regulation governing the use of any chemical herbicide or pesticide.

   c. "Claims" or "Suits" for "Damages" for "Property Damage" resulting from any "Covered Party Contract" for the ownership, maintenance or use of any aircraft used for aerial spraying of any product for the control of weeds and pests.

3. Schedule Limits of Coverage

   | Property Damage | Limits of Liability |
   |---|---|
   | Annual Aggregate Limit | $50,000 |
   | Products/Completed Operations Annual Aggregate Limit | $50,000 |
   | Per Occurrence Limit | $10,000 |
   | Per Claimant Limit | $10,000 |

# GARAGEKEEPERS COMPREHENSIVE COVERAGE

This coverage is excess over any other insurance or coverage regardless of whether the other insurance or coverage covers you or any other "Covered Party's" interest or the interest of the "Covered Auto's" owner.

Limit of Coverage - $45,000 Per Occurrence

Deductible - $1,000 Per Occurrence

## A. COVERAGE

1. We will pay all sums the "Member" legally must pay as "Damages" for "Loss" to a "Covered Auto" or "Auto" equipment left in the "Member's" care while the "Covered Party" is attending, parking, or storing it in your operations under:

   a. Comprehensive Coverage.  From any cause except:

      (1) The "Covered Auto's" collision with another object;

      (2) The "Covered Auto's" overturn; or

      (3) Flood or earthquake.

## B. DEFINITIONS

1. "Auto" means land motor vehicle, trailer or boat.

## C. EXCLUSIONS

This coverage does not apply to any of the following:

1. Contractual obligations

   Liability resulting from any agreement by which the "Covered Party" accepts responsibility for loss.

MCITCD (2005)-71

# MINNESOTA COUNTIES INSURANCE TRUST

# PUBLIC OFFICIALS LIABILITY ENDORSEMENT

# ENHANCED DEFENSE COVERAGE

In consideration of contributions charged, we will have the right and duty to defend a "Covered Party" under Section I. Coverage Part D. PUBLIC OFFICIALS LIABILITY from "Claims" or "Suits" excluded under General Exclusion I, but for which no other exclusions apply, except that ENHANCED DEFENSE COVERAGE will not apply to any "Claims" or "Suits" caused by or arising out of:

a) Criminal prosecutions and proceedings;

b) Elections;

c) Actions taken against the "Covered Party" by any official, department or agency of the "Covered Party" related to budget, salaries, staff, or similar issues;

d) Actions to require compliance with applicable law and regulations or seeking exemption therefrom, excepting laws and regulations relating to land use; or

e) Non-judicial proceedings.

Our right and duty to defend end when we have exhausted the limit of coverage provided by this endorsement. All other terms and conditions remain the same unless otherwise endorsed.

## LIMIT OF LIABILITY

The most the Trust will be liable for under this endorsement is:

$100,000 per Claim or Suit

MCITCD (2005)-72