UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Todd County, Wadena County and Otter Tail
County, municipal subdivisions of the
State of Minnesota,

        Plaintiffs/Counterclaim Defendants/
        Debtors,

  v.

Barlow Projects, Inc.,

        Defendant/Counterclaimant/Judgment
        Creditor/Plaintiff on Supplemental
        Complaint,

  v.

Minnesota Counties Insurance Trust,

        Garnishee/Defendant on Supplemental
        Complaint.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 04-4218 ADM/AJB

---

Randy G. Gullickson, Esq., and Cory D. Olson, Esq., Anthony Ostlund & Baer, P.A., on behalf of Barlow Projects, Inc.

Jay T. Squires, Esq., Ratwik, Roszak & Maloney, P.A., and Tony R. Krall, Esq., Hanson Lulic & Krall, LLC, on behalf of Minnesota Counties Insurance Trust.

---

## I. INTRODUCTION

On October 16, 2007, the undersigned United States District Judge heard oral argument on Minnesota Counties Insurance Trust's ("MCIT") Motion for Summary Judgment [Docket No. 90]. In its Motion for Summary Judgment, MCIT asserts that there is no genuine issue of material fact regarding its denial of Todd, Wadena, and Otter Tail County's ("the Counties") claim for coverage. For the reasons set forth herein, MCIT's Motion is granted.

## II. BACKGROUND[1]

Barlow Projects, Inc. ("Barlow") is a Colorado corporation involved in the development and operation of waste-to-energy facilities. Miller-Shugart Stipulation [Doc. No. 71] at 1. In 2001, Barlow contracted with the City of Perham ("the City") to retrofit and manage a Quadrant Resource Recovery Facility ("QRR facility") that the Minnesota Pollution Control Agency had closed. May 11, 2005, Order [Docket No. 41] at 3. Subsequently, the Counties executed an agreement with the City for waste delivery to the QRR facility ("the Waste Delivery Agreement"). Id. Under the Waste Delivery Agreement, the Counties agreed to deliver waste to the facility for a "tipping fee." Id. at 4. The Agreement also required the Counties to deliver a specific tonnage of waste to the facility per month, provide capital for the project through the repayment of bonds issued by Perham, commit to twenty years at an open-ended price, and be responsible for losses if the facility was not successful. Id. In exchange, the Counties were entitled to share in any income generated by the facility. Id. The City and the Counties assert that they lost money every year since the QRR facility began operation. Id

In September 2004, the City terminated Barlow and stopped paying as otherwise required under the contract. Miller-Shugart Stipulation at 2. The Counties subsequently filed suit against Barlow asserting two counts of common law fraud based on misrepresentation, common law fraud based on omissions, negligent misrepresentation, breach of fiduciary duty, engineering malpractice, and breach of contract. Compl. [Docket No. 1]. In its Answer [Docket No. 43], Barlow asserted the following counterclaims: (1) tortious interference with contract; (2) tortious

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

interference with prospective economic advantage; (3) unjust enrichment; and (4) civil conspiracy. The suit by the Counties and the counterclaims asserted by Barlow underlie the present action.

After receiving Barlow's counterclaims, the Counties filed a claim with MCIT seeking coverage for defense of the claims and indemnification for any award of damages. Miller-Shugart Stipulation at 3. MCIT is a self-insurance pool created pursuant to Minn. Stat. §§ 471.59 and 471.981. MCIT Bylaws (Zylstra Decl. [Docket No. 94] Ex. R) at 2. The Counties are all members of the MCIT. Miller-Shugart Stipulation at 3. Members of the MCIT pool funds in order to "[d]evelop and administer a risk management program" and "[d]efend and protect, in accordance with the Joint Powers Agreement, bylaws and coverage documents, any Member against stated liability or loss." MCIT Bylaws at 2. On June 8, 2005, MCIT explained its denial of the Counties' claim for coverage and cited General Exclusion C of the Coverage Document provided to its members. Letter from MCIT to David J. Hauser, Otter Tail County Att'y (Zylstra Decl. Ex. J) at 2. General Exclusion C disclaims coverage for "Contractual Penalties, Breach of Contract." Id. MCIT then instructed the Counties of their right to appeal the denial by submitting a written request for review to the MCIT Board of Directors within twenty-one days of receiving notice of MCIT's decision. Id.

The Counties submitted a Notice of Appeal and MCIT scheduled a hearing. Letter from MCIT to David J. Hauser, Otter Tail County Att'y (July 20, 2005) (Zylstra Decl. Ex. O) at 3 (hereinafter Hauser 7/20/05 Letter). Before the hearing, MCIT informed the Counties that it was amending its position. Id. In addition to citing General Exclusion C, MCIT asserted that Barlow's counterclaims alleging intentional torts triggered the Coverage Document's provision

3

disclaiming coverage for "Intentional Wrongdoing." Id. MCIT explained its position as follows: "MCIT will have no duty to defend the Counties for [Barlow's] allegations nor will the MCIT have any obligation to indemnify the Counties for any award of damages based on the breach of contract or intentional tort and unlawful conspiracy allegations." Id. In November 2005, the MCIT Board denied the Counties' appeal and affirmed its decision to deny coverage. Member Appeal from Coverage (Zylstra Decl. Ex. DD).

In March 2006, the Counties entered into a Miller-Shugart Stipulation with Barlow in which they conceded that "there would be a substantial risk that a jury would conclude that the Counties are legally liable to Barlow as a result of Barlow's tort counterclaims against them."[2] Miller-Shugart Stipulation at 3. According to the terms of the Stipulation, the Counties and Barlow agreed to a judgment of $250,000 against each of the defendant counties for a total judgment of $750,000. Id. at 7. In exchange, Barlow agreed not to execute the judgment against the Counties but instead reserved the right to execute judgment against MCIT. Id. at 8.

Pursuant to the Stipulation, Barlow filed a Supplemental Complaint [Docket No. 85]. In Count I of its Complaint, Barlow asserts a claim for declaratory judgment that MCIT is required to indemnify the Counties for the damages due to Barlow and for Barlow's attorneys fees. In Count II, Barlow, asserting the contractual rights assigned to it by the Counties, asserts a claim for breach of contract. Barlow contends that MCIT is contractually required to pay Barlow the

---

[2] "A Miller-Shugart agreement allows a plaintiff to settle with an insured and enter into a stipulated judgment which creates a garnishment action for plaintiff to proceed against defendant's liability insurer." R.W. v. T.F., 528 N.W.2d 869, 871 (Minn. 1995) (citing Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982)).

4

damages set forth in the Miller-Shugart Stipulation. In denying coverage, Barlow contends MCIT breached its contract with the Counties. MCIT seeks summary judgment on these claims.

### III.  DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**A.     Judicial Review**

In its Motion for Summary Judgment, MCIT contends that this Court may not review its coverage decision because section 7.11 of its Bylaws states that all coverage decisions are "final and binding." Barlow contends that section 7.11 is subject to section V(D)(2) of MCIT's Coverage Document, which reads: "In the event that any dispute or controversy between the parties arises out of, or is related to, this 'Coverage Document,' such dispute or controversy shall

be subject to the exclusive jurisdiction of the Minnesota District Court in and for Ramsey, County, Minnesota."[3]

Section 7.11 of the Bylaws provides that "All decisions of the Board shall be final and binding on the Member and the Board, subject to the terms of the Agreement, Bylaws, and Coverage Document." MCIT contends that section 7.11 outlines its alternative dispute resolution ("ADR") procedure and that because courts typically limit review of ADR decisions to whether the decisions are unconstitutional or contrary to public policy, any review of MCIT's decision under section V(D)(2) is similarly limited.

The plain language of the Bylaws indicates that the "final and binding" provision is *subject to* the Coverage Document. Section V(D)(2) of the Coverage Document unambiguously provides for court review of MCIT decisions *arising out of* the Coverage Document without any limitation as to subject matter. The exclusions cited by MCIT in support of its denial of coverage are contained in the Coverage Document. Accordingly, a determination regarding whether MCIT correctly determined that the exclusions apply is a determination arising from the Coverage Document and is reviewable by this Court under section V(D)(2).

**B.     Denial of Coverage**

The parties dispute the standard of review the Court should apply in considering MCIT's denial of coverage. MCIT urges the Court to apply the arbitrary and capricious standard whereby the Court must uphold MCIT's decision unless Barlow demonstrates "it was arbitrary and capricious or unsupported by substantial evidence." Barlow contends that MCIT functions

---

[3] The parties do not contend that section V(D)(2) precludes the removal of this action from Ramsey County District Court to the U.S. District Court for the District of Minnesota.

as an insurance carrier and thus that its denial of coverage is subject to the same standard of review this Court would apply to any insurance company's coverage decision. Under Minnesota law, the "interpretation and construction of an insurance policy is a matter of law for the trial court to determine." Auto-Owners Ins. Co. v. Jensen, 667 F.2d 714, 717 (8th Cir. 1981). Regardless of whether this Court reviews MCIT's decision under an arbitrary and capricious standard or reviews it de novo, there is no genuine issue of material fact for trial.

In the Miller-Shugart Stipulation, the Counties and Barlow agreed that a reasonable jury could find the Counties liable for Barlow's tort counterclaims and stipulated to a monetary settlement. Accordingly, Barlow's tort counterclaims are the underlying basis for Barlow's claim for coverage. In the underlying suit, Barlow alleged two tort claims–Count One: tortious interference with contract; and Count Two: tortious interference with prospective economic advantage. Barlow Answer and Counterclaim ¶¶ 30-39. In Count One, Barlow alleged that the "Counties intentionally and improperly procured the breach of [its contract with the City] by engaging in wrongful conduct." Id. ¶ 33. In Count Two, Barlow alleged that "[e]ach of the Counties intentionally and improperly interfered with these prospective contractual relations with the City by inducing the City not to continue with its hiring of Barlow as the operator of the QRR Facility." Id. ¶ 37.

In its Motion for Summary Judgement, MCIT contends that Barlow's tort claims arise out of its contract with the City, that the Counties are third-party beneficiaries to that contract, and, accordingly, that the claim is barred by General Exclusion C of the Coverage Document. Barlow contends that while the Counties' third-party beneficiary status might entitle the Counties to enforce Barlow's contractual obligations owed to the City, third-party beneficiary

7

status does not make the Counties "contractually responsible for the City's contractual obligations to Barlow." In short, the Counties' third-party beneficiary status does not create the type of obligation necessary for General Exclusion C to apply. Barlow further contends that its claims against the Counties were not premised on breach of contract, but rather were based upon tortious conduct.

General Exclusion C excludes coverage for "[a]ny 'Claim' based upon breach of contract or other obligation, including an obligation arising out of a written agreement creating an obligation on behalf of a 'Member' to another person or entity." MCIT Coverage Document (Zylstra Decl. Ex. K) at 44. General Exclusion C precludes claims for coverage where a member's liability arises from its failure to comply with an obligation created either by contract or "arising out of a written agreement." In this case, the Counties' status as third-party beneficiaries to the contract between the City and Barlow did not create a contractual obligation, rather it afforded the Counties with the necessary standing to enforce the contract against the contracting parties. The Court is also persuaded by Barlow's contention that its claims sound in tort and are not "based upon breach of contract or other obligation." There is no genuine issue of fact for trial regarding whether General Exclusion C bars Barlow's claim for coverage. Regardless of whether the Court utilizes the arbitrary and capricious standard advocated by MCIT or the de novo standard advocated by Barlow, MCIT has failed to demonstrate that Barlow's claim for coverage is excluded by General Exclusion C.

MCIT also contends that its decision to deny coverage is supported by a provision in the Coverage Document excluding coverage for intentional wrongdoing by public officials. The intentional wrongdoing exclusion precludes coverage for "[a]ny 'Claim' arising out of a

'Wrongful Act' committed intentionally and with knowledge of wrongdoing." MCIT Coverage Document at 14. MCIT argues that because Barlow's underlying claims allege intentional acts, the intentional wrongdoing exclusion applies. Barlow contends that MCIT's conclusion that the intentional wrongdoing exclusion applies relies on a misreading of the exclusion. Barlow asserts, in order for the exclusion to apply, it is not enough to demonstrate that the wrongdoer intended to act, rather, MCIT must also demonstrate that the act was committed with knowledge of wrongdoing. Barlow defines the "knowledge of wrongdoing" requirement as requiring proof that the wrongdoer acted with specific intent to injure. Utilizing that definition, Barlow contends there is no evidence in the record demonstrating that the Counties acted with knowledge of wrongdoing leaving a genuine issue of fact for trial. MCIT does not address the meaning of the "knowledge of wrongdoing" clause; however, even applying Barlow's definition the Court concludes that there is no genuine issue of material fact for trial.

A tortious interference with contractual relationship claim requires proof of: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." <u>Furley Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.</u>, 325 N.W.2d 20, 25 (Minn. 1982). A claim of tortious interference with prospective economic advantage requires proof that the actor intentionally committed a wrongful act that improperly interfered with a prospective economic advantage. <u>United Wild Rice, Inc. v. Nelson</u>, 313 N.W.2d 628, 633 (Minn. 1982) (adopting the Restatement (Second) of Torts § 766B (1977)). The interference may consist of "inducing or otherwise causing a third person not to enter into or continue the prospective relation," or "preventing the other from acquiring or continuing the prospective relation." Restatement (Second) of Torts §

766B. Both tort theories require proof that the Counties intended to injure Barlow by intentionally procuring the breach of its contract with the City or by intentionally preventing the continuation of Barlow's prospective relationship with the City.

Barlow contends that "the factual record before the Court merely demonstrates that the Defendant Counties sought to cause the various parties to renegotiate their contracts in order to better their financial position in the QRR Facility." Accordingly, Barlow asserts that the Counties' desire to bring about renegotiation does not demonstrate intent to cause damages and that "[a]t a minimum, there are factual issues to be resolved at trial." However, there is ample evidence in the record demonstrating that the Counties intended to both cause the City to renegotiate its contract with Barlow, and if renegotiation was not possible, cause the City to breach its contract. Otter Tail County official Michael Hannan testified regarding the Counties' intentional interference with Barlow's contract: "I think we saw termination as an option and we saw negotiations as an option." Hannon Dep. (Zylstra Decl. Ex. S) at 197. This position is also reflected in a Todd County Resolution in which the County resolved to "Renegotiate agreements between the City of Perham and the participating counties . . . [and] exercise our right to terminate Perham's operating agreement with Barlow Projects." Todd County Resolution (Zylstra Decl. Ex. GG) at 4.

That the Counties had a dual purpose in interfering with the City's contract with Barlow does not create a genuine issue as to whether they intended to cause the breach or interfere with Barlow's prospective economic relationship with the City. They intended to cause the breach and intended to interfere with Barlow's prospective economic relationships and were successful in doing so. Accordingly, there is no genuine issue of material fact as to whether the Counties

acted with knowledge of wrongdoing–that is, with intent to injure.  Barlow has failed to demonstrate that MCIT's denial of coverage based on the intentional acts exclusion is unsupported by substantial evidence or should not survive de novo review.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that MCIT's Motion for Summary Judgment [Docket No. 90] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

                                          BY THE COURT:


                                          s/Ann D. Montgomery
                                          ANN D. MONTGOMERY
                                          U.S. DISTRICT JUDGE

Dated:  November 26, 2007.